## TEMPE DARROW V. GEORGE R. SUMMERHILL ET AL.

Decided March 4, 1900.

**1. Vendor's Lien—Foreign Judgment—Subrogation.**

Where a vendor of lands situated in Texas obtains in the courts of another State a personal judgment against the maker of notes given for the purchase money of the land, a vendor's lien exists in favor of the judgment which the Texas courts will enforce in favor of a surety on an injunction stay bond who pays off such judgment, or of one who is subrogated to the rights of such surety.

**2. Subrogation—Limitation—Vendor's Lien.**

P. being surety on an injunction bond given by S., a judgment debtor, in a proceeding to restrain collection of an Alabama judgment, became liable, upon a dissolution of the injunction, for the amount of such judgment, and thereafter conveyed his property to a niece charged with the payment of his debts. The niece devised all her property to D., who compromised the judgment claim and paid it. Held, that D. was entitled to be subrogated to the rights of the judgment creditor against the estate of S., including the right to enforce a vendor's lien against lands in Texas, and this although the right to enforce the judgment here would have been barred by the Texas statute had D. been a resident of this State.

**3. Same—Laches.**

A delay by D. of nearly four years in bringing suit to enforce her right of subrogation was not such laches as would render it inequitable for her to recover.

**4. Same—Parties.**

D. having paid off and satisfied the judgment, the heirs and devisees of the judgment creditor were not necessary or proper parties to an action brought by

D., in right of subrogation, to enforce the security of a vendor's lien in favor of the judgment held by the creditor, the title to which, by his death, had passed to his estate at the time of such payment.

5. **Same—Judgment Paid by Surety—Subrogation Suit Not on the Judgment.**

Where one in the attitude of a surety paid off a judgment rendered in another State for the purchase money of land in Texas, it was not necessary for such surety, suing in Texas to enforce the lien against the land, to sue on the original judgment, but he could proceed directly against the parties claiming the land.

6. **Same—Part Payment by Surety—Limitation.**

Where S., occupying the position of a surety, paid part of a judgment the only security for which was a lien on land, limitation began to run from the time of such payment against his right to enforce such lien against the debtor's estate, notwithstanding that the other part of the judgment still remained unpaid. Distinguishing Cason v. Connor, 83 Texas, 26.

7. **Coverture—Pleading and Proof.**

An objection on rehearing that the coverture of appellant T. D. was not sufficiently pleaded and proved below is not well taken where D.'s plea of intervention in the trial court, in which she was joined by her husband, alleged that interveners were legally married to each other in 1897, have continued to live together ever since, and do now live together as husband and wife, and the statement of facts shows that the last will of the party through whom D. claims recites that the testatrix devised her property to her only daughter and heir, T. D., and that she appoints her son in law, G. D., as executor, and appellant's brief, under "undisputed facts," recites that such testatrix devised her property to her only child and heir, the appellant T. D., now the wife of G. D., and appellee's brief in no way denies or challenges such statement, but treats the propositions thereunder as though T. D. was a married woman.

APPEAL from Bowie. Tried below before Hon. J. M. TALBOT.

*A. L. Beaty*, for appellant.

*Henry & Henry*, for appellees.

RAINEY, ASSOCIATE JUSTICE.—The following statement of the nature and result of the suit we take from the brief of appellant: "This suit was originally instituted by Fannie Caudle, as plaintiff. On January 25, 1898, Mary Ryan and others intervened, as did also Tempe Darrow and George M. Darrow. The plaintiff on the same day filed her second amended original petition. The object of the suit, as shown by this amended petition, was to establish and foreclose a lien on the George W. Lang survey of land, in Bowie County, Texas. George R. Summerhill, F. M. Henry, and Rebecca E. Amis, who were alleged to be in possession of the land, and James P. Hanner, his wife, Mary W. Hanner, and T. A. Eubank were made defendants.

"The plaintiff alleged that on January 25, 1858, James Park, of Tennessee, sold the land in question to Horace Summerhill, of Alabama, taking his three notes for $3333.33 each, and expressly retained a lien on the land to secure their payment; that two of these notes were paid, but the third was not, and on March 10, 1862, a judgment was rendered thereon in the Circuit Court of Lauderdale County, Alabama, in favor of James Park against Horace Summerhill for $4430.37, which judg-

ment remained unpaid; that James Park died in 1866, and willed all money arising to him to be equally divided between his wife, Mary Park, and the defendant Mary W. Hanner, and appointed James P. Hanner executor; that on September 21, 1897, she (the plaintiff) obtained judgment in the District Court of Grayson County, Texas, divesting out of James P. Hanner, executor, Mary W. Hanner, T. A. Eubank, and certain of the heirs of Mary Park, deceased, and vesting in her all their interest in the lien which existed on the land in question to secure the Alabama judgment, and it was this lien, less a payment of $7000 made by Tempe Darrow in 1894, that she sued to have established and foreclosed. She alleged that the Alabama judgment was enjoined from 1866 to 1880; that Mary W. Hanner had been a married woman since prior to 1866, and that she (the plaintiff) was a married woman from 1869 to 1895.

"Mary Ryan and her cointerveners made substantially the same allegations with reference to the creation and existence of the lien, and, as heirs of Mary Park, deceased, claimed a half interest therein under the will of James Park. They alleged that the defendants were claiming that the lien debt had been satisfied in 1894 by the payment of $7000 by Tempe Darrow to James P. Hanner as executor; that, if James P. Hanner had ever received this or any other sum, he had never accounted to them for their part,—and prayed, in the alternative, that if the court should deny a foreclosure of the lien for the full amount of the Alabama judgment, with interest, then they recover of James P. Hanner their one-half of the $7000, with interest.

"Interveners Tempe Darrow and George M. Darrow on March 7, 1898, filed their first amended original petition of intervention; repeated in substance the allegations of the plaintiff and the other interveners with reference to the sale of the land, the lien retained, the judgment of the Circuit Court of Alabama on the last $3333.33 note, the injunction proceedings, and further averred that in 1866, when Horace Summerhill instituted the injunction suit in the Chancery Court of Lauderdale County, Alabama, to enjoin and restrain the execution and enforcement of the judgment of the Circuit Court, it became necessary, in order to procure the issuance of the writ, for him to execute a bond, with sureties, payable to and approved by the register in chancery, conditioned on the dissolution of the injunction, to pay the judgment enjoined, with interest; that he induced John Peters, late of Lauderdale County, Alabama, to become surety for him on his injunction bond, which was done purely as an accommodation; that John Peters died in 1869, but prior to his death, and in 1867, he had made and entered into an agreement in writing with Elizabeth T. Swoope and Jacob J. Swoope, also of Lauderdale County, Alabama, whereby, in consideration of the natural love and affection he had for said Elizabeth T. Swoope, he conveyed to her all his rights and estate, real, personal, and mixed, expressly charging the property conveyed with the payment of all his debts and outstanding liabilities; that after the final decree in the cause of Horace Summerhill v. James Park (then Horace Summerhill v.

James P. Hanner, executor) in 1880, dissolving the injunction and dismissing the complainant's bill, Mrs. Swoope and the property held by her under the deed from John Peters became liable on the injunction bond; that in 1881 James P. Hanner, as executor, filed a bill in equity in the Chancery Court of Lauderdale County, Alabama, against Mrs. Swoope, whose husband was then dead, seeking to recover of her the amount of the judgment enjoined, with interest; that this cause in chancery remained pending until August 22, 1894, when, having been settled, it was dismissed; that in 1890 Elizabeth T. Swoope had died, leaving a will appointing M. R. Haley and George M. Darrow executors, and devising the entire residue of her estate, after the payment of certain special legacies, to intervener Tempe Darrow, her daughter and sole heir; that the suit in chancery against Mrs. Swoope upon her death was promptly revived against her executors; that the property received by Mrs. Swoope under the deed from John Peters, and subsequently by intervener Tempe Darrow under her mother's will, was worth more than $10,000; that, she and her estate being liable, intervener Tempe Darrow on July 30, 1894, effected a compromise and settlement in full of the judgment held by Hanner as executor, and all claims thereunder, by paying him $6000, Mrs. Swoope having in 1881 paid him $1000 on the same claim; that by reason of these payments intervener Tempe Darrow, when she made the $6000 payment and full settlement in 1894, became then subrogated and entitled to have the lien which existed on this land to secure the payment of this debt which she had thus satisfied enforced to the extent of the amounts paid, with interest.

"The defendants George R. Summerhill, F. M. Henry, and Rebecca E. Amis jointly filed answers to plaintiff's amended petition and each of the interventions. They pleaded the statutes of limitation, also certain statutes of Alabama, and contended that intervener Tempe Darrow was under no legal obligation to pay any sum when she made the settlement in 1894, and that such settlement by her was made as a volunteer. They also pleaded that the lien had been satisfied and extinguished. By way of supplemental petition the plaintiff and all the interveners pleaded the statutes of Alabama on the question of limitation, showing that actions on judgments or decrees of a court do not become barred there for twenty years, actions on contracts under seal do not become barred for ten years, and actions on contracts not under seal or simple contracts do not become barred for six years after the accrual of such causes of action. The defendant James P. Hanner on September 20, 1897, filed a disclaimer as to the land in question, and also a cross bill seeking to recover of the plaintiff and T. A. Eubank a certain tract of land in Haskell County, Texas. He also filed a supplemental cross bill on the day this cause was tried. Mary W. Hanner filed no answer. The cause was called for trial on April 9, 1898, and at the instance of the defendants a severance was had as to the issues and parties involved by the cross bill of James P. Hanner. The plaintiffs and interveners then dismissed as to T. A. Eubank, and the trial proceeded before the court without a jury. The result was a judgment for Mary Ryan and

her comterveners against James P. Hanner for $2108.75, that otherwise they take nothing, that the plaintiff take nothing, and that interveners Tempe Darrow and George M. Darrow take nothing. From said judgment interveners Tempe Darrow and George M. Darrow prosecute this appeal."

*Conclusions of Fact.*—The following statement taken from appellants' brief being in full accord with the facts proved on the trial, we adopt as our conclusions of fact, to wit:

"On January 27, 1858, James Park, of Williamson County, Tennessee, sold and conveyed to Horace Summerhill, of Lauderdale County, Alabama, the George W. Lang survey of land, in Bowie County, Texas. The consideration was $10,000, as evidenced by three notes executed by Horace Summerhill, bearing even date with the deed, payable to the order of James Park, each in the sum of $3333.33, and due, respectively, twelve, twenty-four, and thirty-six months after date. The deed recited that a lien on the land was expressly retained to secure the payment of these notes. This deed was duly recorded in the office of the county clerk of Bowie County, Texas, on February 26, 1859. Horace Summerhill paid the two notes which matured first, but failed to pay the third, which was due thirty-six months after date; and on February 1, 1861, James Park instituted suit thereon in the Circuit Court of Lauderdale County, Alabama, and on March 10, 1862, after due service, obtained a personal judgment against Horace Summerhill for the amount of said note and interest, aggregating $4430.37, besides costs of suit. Various executions were issued on this judgment, the first being issued on March 20, 1862, and were all returned unsatisfied. Finally an execution was issued on April 9, 1866, and levied on certain lands in Lauderdale County, as the property of Horace Summerhill. Thereupon the latter filed a bill in equity in the Chancery Court of Lauderdale County, Alabama, against James Park, seeking to enjoin said judgment. This bill was filed on August 29, 1866, and upon order of the judge a writ of injunction, directed to the sheriff of Lauderdale County, was, after the complainant had entered bond, issued by the register in chancery restraining and enjoining said sheriff from further proceeding to execute the writ of fieri facias then in his hands, or any other process from the Circuit Court of said county founded on said judgment, and the execution was on said date returned, 'Stayed by injunction.'

"On September 4, 1866, after the institution of the suit in chancery and service of the injunction, James Park died, leaving a will, which was duly probated in Williamson County, Tennessee, the place of his residence, whereby James P. Hanner was appointed executor. After he had accepted the trust and qualified, the suit in chancery proceeded against James P. Hanner, executor, as the legal representative of James Park, deceased. The injunction remained in full force and effect until April 3, 1880, when a final judgment was rendered dissolving the injunction and dismissing the complainant's bill. The register in chancery thereupon, on October 27, 1880, certified this final decree to the clerk

of the circuit court, with direction to issue execution against the complainant and G. R. Summerhill and John Peters, sureties on the injunction bond. It was provided by section 3869 of the Code of Alabama: 'No injunction must be issued to stay proceedings after judgment, in a personal action, until the party at whose application the writ issued gives bond and security in double the amount of such judgment, payable to and approved by the register, conditioned on the dissolution of such injunction to pay the amount of the judgment enjoined, with interest, and also such damages and costs as may be decreed against such party.' It was also provided by section 3876 of said code: 'A bond to enjoin proceedings at law on a judgment for money, upon the dissolution thereof, in whole or in part, either upon an interlocutory or final decree, has the force and effect of a judgment; and being certified by the register to the clerk of the court in which the judgment was rendered, execution may issue against any or all the obligors thereto, for the amount of such judgment, which has been enjoined, interest, and the damages decreed.'

"When the suit in chancery was filed on August 29, 1866, John Peters, who resided in Lauderdale County, Alabama, signed the injunction bond for Horace Summerhill, as one of his sureties, and defendant George R. Summerhill signed as the other surety. The bond was in the sum of $8861.14, approved by the register, and payable and conditioned as provided by statute. Section 3869, above quoted. Pending the litigation in chancery, and in the spring of 1869, the surety John Peters died. But prior to his death, and on March 25, 1867, he had made and entered into an agreement in writing with his niece Elizabeth T. Swoope and her husband, Jacob K. Swoope, who also resided in Lauderdale County, Alabama, whereby, in consideration of the natural love and affection which said John Peters had for his niece Elizabeth T. Swoope, he gave, granted, bargained, and sold to her, to be her separate property, 'all and singular, the goods, chattels, rights, and credits, choses in action and possession, and any and all other personal or mixed property,' then owned by or belonging to the grantor, and also all his real estate situated in Lauderdale County, Alabama. It was also a further consideration for this conveyance, and declared to be a charge upon the estate conveyed, that Elizabeth T. Swoope and her husband, Jacob K. Swoope, did assume and agree to pay out of said estate so conveyed all the just debts and outstanding liabilities then owing by John Peters to any and all persons whomsoever, and that they provide for his comfortable support during the remainder of his life by paying him out of said estate $2000 per annum. Mrs. Swoope immediately after the execution and delivery of this deed, in 1867, went into possession of the estate thereby conveyed, which was of the value of $75,000.

"Section 2905 of the Code of Alabama provided that 'when two or more persons are jointly bound by judgment, bond, covenant, or promise in writing of any description whatsoever, the obligation or promise is in law several as well as joint, and suit may be instituted thereon against the legal representatives of such as are dead.' On May 17, 1881, James P. Hanner, as executor of James Park, deceased, filed a bill in equity

in the Chancery Court for Lauderdale County, Alabama, against Elizabeth T. Swoope, whose husband was then dead, pleading the execution of the injunction bond by John Peters on August 29, 1866, in the suit of Horace Summerhill v. James Park, the subsequent death of John Peters, the deed from him to Mrs. Swoope, the final decree dissolving the injunction, the certifying of this decree by the register to the circuit court, and praying that the lands acquired by Mrs. Swoope from John Peters be charged with payment of the bond, and for recovery against her out of said estate, with decree that the lands be sold, etc. It was also alleged in this bill (paragraphs 13 to 19) that under certain deeds of trust by Horace Summerhill and William H. Summerhill on 640 acres of land in Lauderdale County, Alabama, dated January 5, 1863, and July 27, 1870, respectively, and sales made thereunder, Mrs. Swoope received indemnity to the amount of $10,664.80 against her liability on the bond. But appellants affirmatively proved by the deeds of trusts and trustee's deeds thereunder, and by the receipts of the parties, that the entire proceeds of these sales were applied to the payment of other debts which were secured by the deeds of trust, showing that not one cent went to indemnify Mrs. Swoope.

"Summons was issued on this bill, and service acknowledged by the defendant on May 17, 1881. The cause was continued from term to term until the fall term of said court, 1894, when it was dismissed at cost to defendants. During its pendency, however, Mrs. Swoope died, leaving a will, which was duly probated in Lauderdale County, Alabama, by which will Mark R. Haley and George M. Darrow were appointed executors. When they had duly qualified, the suit in chancery against Mrs. Swoope was revived against them as her executors. After certain special devises and bequests, Mrs. Swoope by her said will devised and bequeathed the rest and residue of her estate, real, personal, and mixed, wheresoever situated, to her only daughter and heir, appellant Tempe Darrow, then and now the wife of George M. Darrow. The suit in chancery (James P. Hanner, Executor, v. Elizabeth T. Swoope) was finally settled by appellant Tempe Darrow by the payment of $6000 to R. T. Simpson, the attorney for James P. Hanner, executor, on July 30, 1894; Mrs. Swoope having on May 21, 1881, in her lifetime, paid him $1000 on the same claim. Mrs. Darrow also paid the costs of suit, amounting to $110.19. All of this money was paid by her out of property which she had received as residuary devisee under her mother's will. This property received by her as residuary devisee was of the value of $35,000, and was a portion of that conveyed by John Peters to Mrs. Swoope. The estate of the latter had then been wound up and settled, and the entire residue delivered to Mrs. Darrow according to the will. The suit was about to be further prosecuted against Mrs. Darrow when this settlement was made, and she paid the $6000 as a full and complete compromise and settlement of the judgment of the circuit court and all claims thereunder, in all respects and against all persons whomsoever. She has never been reimbursed for the amount so paid, nor any part thereof. James P. Hanner, as executor, received the net proceeds, to wit,

$3500, of this collection from his attorney, R. T. Simpson, on November 4, 1894; the balance having been expended in attorney's fees and costs of litigation.

"The will of James Park contained, among other clauses, the following: 'I will all money I have or may have at my death, or money arising to me, to be equally divided [between] my wife and Dr. J. P. Hanner's wife.' James P. Hanner and his wife, Mary W. Hanner (née Walker) were married in the year 1865, and are yet living together as husband and wife. Mary Park, the wife of James Park, died in 1878, and Mary Ryan, Annie Ryan, Wylie Cotton, Erskine Cotton, Mattie Cotton, J. B. Cotton, Dona L. Russell, Fearn E. Russell, Annie Russell, and Maggie Russell are her only heirs; but James P. Hanner has never accounted to them for any portion of the money collected by him, as executor, from Mrs. Darrow in 1894. Horace Summerhill, through his agents, took possession of the George W. Lang survey of land in Bowie County under his deed from James Park in 1859, and he and defendant have paid all taxes due thereon from then to the present time. In 1874 William H. Summerhill and George R. Summerhill, as agents of their father, moved on said land, and the same has been occupied by defendant George R. Summerhill and others, under a common right, to the present time. On May 8, 1876, Horace Summerhill deeded 700 acres of this land to said George R. Summerhill, his son, reciting a cash consideration of $5000 paid; but the true consideration was some $5000, which George R. Summerhill had previously paid on debts which his father owed. On February 8, 1877, Horace Summerhill deeded another 700 acres of this land to his daughter Rebecca E. Amis, reciting a cash consideration of $5000; but, further than the recital in the deed, the evidence failed to disclose what the consideration was. He had deeded the remaining 700 acres of this land on August 11, 1873, to his son William H. Summerhill, reciting a like consideration of $5000, but the true consideration was some $8000 or $10,000 which William H. Summerhill had previously paid on debts which his father owed.

"In 1881 James P. Hanner and Mary W. Hanner, as legatees and devisees under the will of James Park, filed suit in the District Court of Bowie County, Texas, against Horace Summerhill, George R. Summerhill, Rebecca E. Amis, and William H. Summerhill, seeking, first, to recover the land involved in this suit, or, in the alternative, to recover a judgment against Horace Summerhill on the Alabama judgment, and to subject the land to the payment thereof. F. M. Henry was retained by the defendants in that suit as their counsel, and was deeded an undivided third interest in the land in question as a fee for his legal services. He has since obtained a deed to a specific portion of the land. That suit remained pending until the year 1894, when a judgment which had been rendered for the defendants was affirmed by the Court of Civil Appeals (26 Southwestern Reporter, 906); the court finding and holding that the Hanners could not recover the land, under the facts shown, and that they could not foreclose their lien, because they had previously, on March 25, 1888, upon suggestion of Horace Summerhill's death,

abandoned their claim for the purchase money, and had never renewed the same by amendment, and further, because all necessary parties plaintiff were not before the court. Appellees George R. Summerhill, F. M. Henry, and Rebecca E. Amis now have all the land in question; holding the same by deeds from and under Horace Summerhill, having acquired the interest of William H. Summerhill. Horace Summerhill died at his home in Lauderdale County, Alabama, December 26, 1886, and at his death owned no property of any nature or description, and there has never been an administration on his estate. When each of the appellees Summerhill, Henry, and Amis acquired their title to the land in question, they knew of the judgment rendered in the Circuit Court of Lauderdale County, Alabama, upon the last note for the purchase price of the land, and so did William H. Summerhill when he acquired his interest.

"On September 21, 1897, in a suit pending in the District Court of Grayson County, Texas, Fannie Caudle obtained a judgment, as plaintiff therein, against James P. Hanner individually, as well as executor of the will of James Park, deceased, Mary W. Hanner, Dona L. Russell, Fearn E. Russell, and Annie Russell, as defendants therein, whereby it was ordered, adjudged, and decreed by the court that all right, title, interest, and claim which said defendants had or appeared to have in and to the lien which existed on said land to secure the payment of the judgment of the Circuit Court of Lauderdale County, Alabama, was devested out of said defendants therein and vested in said plaintiff. Said judgment recited on its face that all parties defendant had been 'duly cited and notified by personal service as the law directs.' But in fact the service was had outside of this State, and said defendants were nonresidents at the time. Section 3247 of the Alabama Code provided that, 'when the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or statute prohibition, is not computed as part of the time.' Section 3250 of said Code provided that 'when the United States is at war with a foreign country, and either party to a contract is a subject or citizen thereof, the time of the continuance of the war is not computed as a part of the time limited for the commencement of the suit.' Section 2908 of said Code provided, 'No action abates by the death or other disability of the plaintiff or defendant, if the cause of action survive or continue; but the same must, on motion within eighteen months thereafter, be revived in the name of or against the legal representatives of the deceased, his successor or party in interest; or the death of such party may be suggested upon the record, and the action proceed in the name of or against the survivor. Section 3248 of said Code provided: 'A disability which did not exist when the cause of action accrued does not suspend the operation of limitation unless the contrary is expressly provided.' It was provided by the Code of Alabama that actions upon a judgment or decree of any court of Alabama, of the United States, or of any State or Territory of the United States, may be commenced within twenty years after the cause of action has accrued, and not afterwards; that actions founded upon any contract of writing under seal

may be brought within ten years, and actions founded upon a promise in writing not under seal or actions arising from simple contracts may be brought within six years, after the cause of action accrues."

*Opinion.*—The facts disclose that the property of Tempe Darrow was liable for the payment of the judgment in favor of Park against Horace Summerhill; it having descended to her, through her mother, from John Peters, who was bound for the payment thereof by reason of the judgment rendered against him as surety for Horace Summerhill in the injunction proceeding instituted by said Summerhill to restrain the judgment in favor of Park against him. Harris, Subr., sec. 2. Tempe Darrow, therefore, can not be considered a mere volunteer in making the payment, and she is entitled to be subrogated to such rights as would have existed in John Peters, the surety, had he lived and paid the judgment. There can be no question, had the payment been made by Peters, that he would have been subrogated to the right of Park to recover of the estate of Summerhill the amount paid, and also to the security held by him to recover the payment of his claim. It is well settled that when a surety is compelled to pay the debt of his principal, subrogation to the rights of the creditor follows. Willis v. Chowning, 40 S. W. Rep., 395; Faires v. Cockerell, 88 Texas, 428. There is nothing in the contention that she is not subrogated because she compromised the claim. The payment made by her discharged the judgment against the estate of Horace Summerhill, and, it being a legal claim, the fact that she settled for less than the full amount of the judgment does not affect her rights in the premises, as she is seeking only to subject the land to the payment of the amount she paid. Said land would not be responsible for more than she paid, and, as it was less than the amount for which the land was bound, the defendants are in no attitude to complain on that account.

Park having sued Horace Summerhill on the note given for part of the purchase price of the land, and recovered a personal judgment, the next inquiry is, did a lien exist on the land to secure the payment of same? Our Supreme Court has settled this inquiry in the affirmative. Slaughter v. Owens, 60 Texas, 670; Beck v. Tarrant, 61 Texas, 404; Ball v. Hill, 48 Texas, 634; Summerhill v. Hanner, 72 Texas, 224. In Slaughter v. Owens, supra, where the plaintiff was seeking to revive a personal judgment that had been rendered on a note given for the purchase price of land, and to foreclose the lien, the court said: "There is no principle better settled than that the vendor's lien secures the debt contracted for the purchase money, and not merely the note by which such debt is evidenced. This note may be substituted by another, or it may pass into judgment; still the lien will attach to the new security, for that is but an evidence of the original indebtedness. * * * Whatever kept the debt alive preserved, also, the lien; and, so long as the judgment was subsisting and valid as a personal claim against the defendant therein, it existed, also, as the foundation for proceedings against a purchaser from them to foreclose the vendor's lien."

It is insisted that the lien in this case was not enforceable, because

the judgment rendered against Horace Summerhill in 1862 was barred by the statute of limitations. Under the statute of Alabama (Code, sec. 3247), where the judgment existed, a judgment is only barred after the lapse of twenty years from the rendition; and, further, "when the commencement of an action is stayed by an injunction or statutory prohibition, the time of the continuance of the injunction or statutory prohibition, is not computed as part of the time." In 1866 an execution was issued by virtue of said judgment, and Horace Summerhill procured a writ of injunction from the proper court, restraining the sheriff from executing said writ of fieri facias or any other process from the Circuit Court of said county founded on said judgment. We think the effect of the writ of injunction was to restrain the enforcement of the judgment, and that such writ had the effect, under the laws of Alabama, to suspend the running of the statute of limitation during the time it was in force. If such time is excluded from computation, then the judgment was in full force and effect in Alabama when Tempe Darrow discharged it. Although the judgment was not barred in Alabama, we are of the opinion that it could not be enforced in this State, more than ten years having elapsed from the dissolution of the injunction till payment was made, as our statute provides that an action on a judgment rendered in another State is barred in ten years as to residents of this State who have resided here that length of time next preceding the bringing of such action. Rev. Stats., art. 3359. But we are of the opinion that this rule does not apply in this case, as Tempe Darrow occupied the place of John Peters, who was a security. The liability of Tempe Darrow had never ceased, but it was an existing obligation when she paid it, and it is immaterial whether the judgment against Horace Summerhill was barred or not as to his heirs. It will be treated as existing, that she may have relief, and she is entitled to proceed against his estate to recover the amount so paid by her. She was also the equitable assignee of any securities held by the creditor, Park, and entitled to the benefits arising therefrom. Willis v. Chowning, 40 S. W. Rep., 395; Faires v. Cockerell, 88 Texas, 428, 31 S. W. Rep., 190, 639, 28 L. R. A., 528.

In Willis v. Chowning, Justice Brown, speaking for the court, said: "Although the debt may be barred by limitation as against the principal, yet judgment may be entered against the surety, if he be liable thereon, in cases where suit may be maintained against the surety without joining the principal; and if the surety pay the debt, which is at the time barred by limitation as against the principal, but is a valid obligation against the surety, such surety may recover against the principal, or against his estate in case of his death." In Faires v. Cockerell, supra, the court uses the following language: "When the creditor in such a contract has a security from the principal or obligor, or either of them, or if the debt itself constitutes a lien upon the property of the debtor, as a vendor's lien, or if from its nature it be entitled to priority in payment of other debts of the debtor, the person paying the debt, not being a volunteer, will be subrogated to the securities, liens, and priorities of the

creditor, to the extent that he makes payment on the debt; and if it be necessary, from the character of the lien or security, in order to do full justice between the parties, equity will treat the original debt as subsisting, so far as may be necessary to accomplish that end." From these holdings of these two decisions, both rendered by our Supreme Court, we think it clear that Tempe Darrow at the time she paid the debt was entitled to have the land subjected to the payment of the amount she paid in discharging the debt. The right of action in a surety that pays the debt of his principal arises upon the payment thereof, and limitation does not begin to run against such surety until then, as his right of action is not "upon the original obligation itself, but upon the implied contract which exists at law between the principal and surety in such cases." Willis v. Chowning and Faires v. Cockerell, supra. The suit was not brought by her until nearly four years had elapsed after her cause of action had accrued. At the time she paid the judgment, and when suit was instituted, she was under the disability of coverture. The disability of coverture existing only by virtue of the statute, does the statutory rule of limitation apply where the surety is forced to pay the original debt when barred as to the principal, and equity is called into requisition that the surety may have the benefit of any securities that may be held by the creditor to secure the original debt, or do equitable principles as to time for bringing actions apply? If the statutory rule applies, then it is clear her right of action is not barred, as she was under the disability of coverture, and the statute of limitation could not run against her. Nor do we think that she was guilty of any such laches in not sooner bringing suit as would make it inequitable for her to recover. So, under either view of the case, her action was not barred.

It is contended by appellees that upon the death of Park the judgment against Horace Summerhill passed by devise to his daughter, Mrs. Hanner, and his wife, Mrs. Park, and that, as they were joint owners, Mrs. Hanner and the heirs of Mrs. Park, she being dead, were necessary parties to this action, and, not being such, Tempe Darrow can not recover. We do not consider that there is any merit in this contention. When Tempe Darrow paid the judgment to the executor of Park, it was fully discharged as to all those claiming under Park; and, as they had no interest in it after its payment, we are unable to see the necessity of their being made parties. They were not only not necessary parties, but were not even proper parties.

It is also contended by appellees that appellant ought not to recover, as it was necessary to sue in this State upon the original judgment, which was not done, in order to foreclose the lien. We do not concur in this contention: (1) Appellant had no cause of action on the judgment; (2) if a right of action existed on the judgment, Horace Summerhill was insolvent at his death, and there was no one against whom a personal judgment could be rendered; (3) the right to proceed against the parties claiming the land to subject to the debt, as was done in this case, is recognized by the following authorities: Solomon v. Skinner, 82 Texas, 345. The defendants knew of the existence of the lien on the land, and

therefore are not innocent purchasers; nor are there any equities existing in their favor that bar a recovery by Tempe Darrow of the $6000 paid by her to discharge the judgment with legal interest from the date of payment.

As to the $1000 paid by Mrs. Swoope, we are of the opinion that it was barred by limitation when this action was instituted. By virtue of the payment made by her, she was subrogated to that extent to the creditor's rights in the security,—subject, however, to the superior right of the creditor to have the security first subjected to the payment of the residue of his claim. She could have sued to foreclose the lien on the land, made the creditor a party, and upon foreclosure been entitled to reimbursement out of the surplus proceeds arising from the sale of the land after the creditor's demand was satisfied. We do not think such a proceeding is in conflict with the doctrine announced in Cason v. Connor, 83 Texas, 26, which is: "No claim by subrogation, whether conventional or by operation of law, to the securities held or remedies enjoyed by a creditor for the collection of his demand, can be enforced until the whole demand of the creditor has been satisfied. Until then there can be no interference with the creditor's rights or securities which might even by a bare possibility prejudice or in any way embarrass him in the collection of the residue of his demand." For Mrs. Swoope to have pursued the remedy above pointed out by us would have in no way prejudiced or embarrassed the creditor in the collection of the residue of his demand. This being so, the statute began to run against her demand, and sufficient time elapsed before the institution of this suit to bar it. The judgment against Tempe Darrow and husband is reversed, and judgment will be here rendered in their favor, establishing their claim for $6000, with interest at 6 per cent from July 10, 1894, and foreclosing the lien on the land to pay said amount.

*Reversed and rendered.*

ON REHEARING.

February 17, 1900.

Appellees, in their motion for rehearing, insist that the coverture of Tempe Darrow was not sufficiently pleaded and proved to affect the running of the statute of limitation. Tempe Darrow was joined by her husband, George M. Darrow, in her plea of intervention, which alleged "that these interveners were legally married to each other about the year 1887, have continued to live together ever since, and do now live together, as husband and wife; and therefore Tempe Darrow has been, and is now, under disability of coverture." The statement of facts shows that the will of Mrs. Swoope, through which Tempe Darrow claims, was introduced in evidence. Said will, after making certain devises to other parties, recites that she devises "the rest and residue of her estate to her only daughter, and heir, Tempe Swoope Darrow," etc., and named her son-in-law George M. Darrow one of her executors.

The appellants in their brief filed on the original hearing in this court, in stating the "undisputed facts," recited that Mrs. Swoope devised the rest and residue of her estate, real, personal, and mixed, wheresoever situated, "to her only daughter and heir, appellant Tempe Darrow, then and now the wife of George M. Darrow." The appellees not only did not deny this statement in appellants' brief, or in any way challenge it, but in their briefs treated the propositions raised as though Tempe Darrow was a married woman, as alleged. The coverture of Tempe Darrow was sufficiently pleaded, and under the circumstances we feel justified in holding that she was a married woman at the time she paid off the judgment against Summerhill, and continued as such until the trial of this cause. Tempe Darrow being a married woman at the time she paid off the Summerhill judgment, and continuing to be such up to the institution of this suit, the statute of limitation did not run against her.

We certified to the Supreme Court for its determination certain issues in this case, but the issue of Tempe Darrow's coverture was not certified. From the opinion of the Supreme Court on the issues presented (53 Southwestern Reporter, 680), we are satisfied that our disposition of the case was correct. We therefore overrule the motion for rehearing.

*Overruled.*

Writ of error granted, but judgment affirmed, Summerhill v. Darrow, 94 Texas,——; 57 S. W. Reporter, 942.