### ECKERT et al. v. STEWART et al.
### (No. 1362.)

(Court of Civil Appeals of Texas.  Amarillo. Nov. 13, 1918.  Rehearing Denied Dec. 11, 1918.)

1. DEEDS ⊚⇒56(3)—DELIVERY—NECESSITY.

For a deed to operate as a conveyance, there must have been delivery with intent and purpose on the part of the grantor to relinquish control of the deed.

2. DEEDS ⊚⇒61—DELIVERY TO THIRD PERSON —EFFECT.

Where a grantor parts with all control over his deed when he delivers it to a third person for delivery to the grantee on the grantor's death, the conveyance takes immediate effect, and vests in the grantee, title to commence after the grantor's death.

3. WILLS ⊚⇒88(4)—DEED OR WILL—DELIVERY TO THIRD PERSON—EFFECT.

When the grantor in a deed reserves control of the deed or right to dispose of the property during his life, or a deed is deposited with a third party, but under control of the grantor, and not to take effect until after his death, such control renders the instrument testamentary in character, with the right of revocation in the grantor.

4. DEEDS ⊚⇒108—DELIVERY TO THIRD PERSON—EFFECT.

Where a grantor who delivered a deed to a third person, with directions that it should not take effect until his death, retained control of the same, the property, on death of the grantor, passed to the grantee if not otherwise disposed of.

5. DEEDS ⊚⇒177—DELIVERY—EVIDENCE.

A grantor who delivered a deed to a third person, with directions it should not be delivered to the grantee until his death, held to have retained control of the same, so the deed never became effective, the grantor having otherwise disposed of the land by will.

6. ADVERSE POSSESSION ⊚⇒70—THREE-YEAR STATUTE—APPLICABILITY.

The grantee in possession under a deed, control of which the grantor retained during life, held not to trace his claim of title through a regular chain of transfers, etc., and so the three-year statute of limitation was not applicable in a suit by those claiming under the will.

7. LIMITATION OF ACTIONS ⊚⇒72(3) — RUNNING OF STATUTE—MINORS.

Limitations held not to run during the minority of legatees claiming under the will of a grantor, who during life retained control, etc., of the deed under which the grantee therein named claimed.

8. APPEAL AND ERROR ⊚⇒1180(3)—REVERSAL —EFFECT ON PARTIES NOT APPEALING.

Adults who did not answer, and against whom default judgment was rendered, are not entitled to relief, though the judgment, which was adverse to other parties having the same title, was reversed on the appeal of such parties.

9. SUBROGATION ⊚⇒23(6)—RIGHT TO.

A grantee named in deed which never became effective, because the grantor during his life retained control thereof, held not subrogated to the lien of vendor's lien notes against the property, which he discharged.

10. INFANTS ⊚⇒115—APPEAL—PROTECTION OF MINORS NOT APPEALING.

The appellate court, on reversing an adverse judgment on appeal of some of the parties, etc., will protect the interest of minors having the same title, though they did not appeal.

Appeal from District Court, Armstrong County; Hugh L. Umphres, Judge.

Action by Otto Eckert and others against S. B. Stewart and others.  From a judgment for defendants, plaintiffs appeal.  Reversed in part and affirmed in part.

Reeder & Reeder and J. B. Dooley, all of Amarillo, for appellants.

J. N. Browning and L. C. Barrett, both of Amarillo, and J. S. Stallings and W. A. Wilson, both of Claude, for appellees.

HUFF, C. J.  This is an appeal from a judgment rendered upon an instructed verdict.  The assignments present as error the refusal of the court to instruct a verdict for the appellants, and the refusal of requested charges submitting certain issues of fact and error on the part of the court in taking the case from the jury and directing a verdict.  The questions involved will require a somewhat lengthy statement of the facts and issues.

The controversy is over the title to a section of land in Armstrong county (section No. 177, block B4), which was owned by C. W. Stewart and his wife, Mary Stewart, during their lifetime, and a part of their community estate.  The question involved is whether the land passed to S. B. Stewart by deed to him from C. W. and Mary A. Stewart, or passed by their will to the named children and grandchildren of C. W. and Mary Stewart, as joint residuary devisees.  The plaintiffs, appellants here, Otto Eckert and his wife, Minnie Eckert, Q. D. Black and his wife, Hermie Black, and Charles Taylor, filed their first amended original petition June 15, 1916, making new parties.  The parties defendant are S. B. Stewart, Mrs. Joe Stewart, Ida Stewart, Charles Stewart, Jr., Nannie Stewart, C. K. Stewart, Charles Stewart, Ambrose Stewart, Jr., May Stewart, and Jeb Stewart.  The petition set up the respective interests

of the plaintiffs and defendants to the section of land under two wills, properly probated, one by C. W. Stewart, the father and grandfather of the parties, and one by Mary A. Stewart, the mother and grandmother of the parties. The respective interests of the parties, as set out in the petition under the two wills, it is not deemed necessary to state at this time. The petition sought to have the interests of the respective parties ascertained and the land partitioned between them. The original petition of the plaintiff declared against S. B. Stewart alone in trespass to try title, suing for their alleged interest in the land. That petition was filed September 23, 1915. The amended original petition set out more fully their claim under the will, but no new parties were brought in by the amendment, which was filed June 15, 1916. J. B. Stewart answered by general denial and not guilty, and specially alleged that at the time C. W. and Mary A. Stewart made their respective wills that they had no legal title to the land, but that the section belonged to S. B. Stewart. He also pleaded in bar the three and five year statutes of limitation against all parties. Mrs. Joe Stewart, the wife of S. B. Stewart, adopted the answer of her husband. The minors, Ida Stewart, Charles Stewart, Jr., Nannie Stewart, Murrill Stewart, Ambrose Stewart, Jr., and O. K. A. Stewart answered by guardian ad litem appointed by the trial court, and they adopted the pleadings of the plaintiff. By supplement answer S. B. Stewart and wife set up the right of subrogation to certain vendor's lien notes paid off by S. B. Stewart, and also set up a deed executed by C. W. and Mary A. Stewart to the land, conveying the same to S. B. Stewart, and alleged that they did not know of the deed at the time the wills were probated and not until some time after. The plaintiffs, by supplemental petition, answered that the deed was never delivered, and would not support the statute of limitations; that the deed never passed from the control or dominion of C. W. Stewart; and they also pleaded the statutes of limitations, three, four, and ten years, against Stewart's plea of subrogation. The defendant S. B. Stewart and wife also filed a trial amendment, which at this time is not necessary to set out. The trial court directed the jury to return a verdict in favor of S. B. Stewart against all the other parties to the suit, and judgment was accordingly so rendered. Charles Stewart, Mary Stewart, Jeb Stewart, and Ambrose Stewart filed no answer, and default judgment was rendered against them.

The appellants Minnie Eckert, Hermie Black and Charles Taylor are the children of Mrs. Sophia Catherine Stewart Taylor, a daughter of C. W. and Mary A. Stewart. Mrs. Taylor, the mother of plaintiff, died December, 1906. S. B. Stewart, Ambrose Stewart, and Charles Stewart are the sons of C. W. and Mary A. Stewart. Ambrose Stewart had no children. The minors Ida, Charles, C. K., and Nannie are the children of S. B. Stewart and grandchildren of C. W. and Mary A. Stewart. May, Jeb, Murrill, Ambrose, and O. K. A. Stewart are the children of Charles Stewart. May and Jeb were of age at the institution of the suit; the other three are minors, represented by the guardian ad litem. C. W. Stewart and Mart A. Stewart executed a warranty deed in the usual form, conveying the section of land in question, No. 177, to S. B. Stewart. It was acknowledged in due form, and dated September 24, 1906, reciting therein the consideration to be "one dollar cash, and the assumption and payment by said S. B. Stewart of one-third of two promissory vendor's lien notes, each for the sum of $1,493.00, with a credit of $493.00, due on November 1, 1905, respectively, payable to Wm. Brooks, Close, and Ed Ford North, for the premises hereinafter described, and section No. 139 and 179, in block B4, H. & G. N. Ry. Co., Armstrong county, Texas, and other valuable considerations"; retaining a vendor's lien until the notes and interest were fully paid. This deed was filed for record the 20th day of April, 1911. On October 15, A. D. 1906, Wm. Brooks Close and Ed Ford North executed a release of the above vendor's lien notes, in which release it was recited they had conveyed the three sections of land, Nos. 139, 177, and 179, to C. W. Stewart on the 25th day of August, 1902, by deed of that date, and in said deed retained vendor's lien on said section to secure part of the purchase money evidenced by three notes for $1,493 each, payable to the order of the grantors, November 1, 1903, 1904, and 1905, respectively, with 8 per cent. interest; that the notes had been paid to them, for which they did thereby release, discharge, and quitclaim unto C. W. Stewart all right and title, interest and estate, to the land, etc. This release was recorded November 17, 1906. On the 27th day of November, 1906, C. W. Stewart made his will, and in the preamble thereof he recited: "Being desirous of disposing of all the estate of which I may die possessed," he made and published the will as his last will and testament. The second clause expresses a desire that his just debts, etc., be first paid out of his estate. By the third clause he gave to his son Charles Stewart all of section 138, block B4, and also all of section 144, block B4, in Armstrong county. By the fourth clause he gave to his son S. B. Stewart all of section 179, in block B4. The fifth clause directed, after his death, that his debts should be paid out of any personal property of which he died possessed. "And if that be not sufficient to discharge all such debts, then that the remainder thereof shall be paid out of the proceeds of sec-

tion No. 177, in Armstrong county, Texas." The sixth clause:

"I further desire and direct that, after the payment of all my just debts, the remainder of the property of which I may die possessed, whether the same be real, personal, or mixed, choses in action or choses in possession, and wheresoever the same may be located or to be found, shall pass to all my children then living, share and share alike. If any shall die before I do, then the share of such a one is hereby bequeathed to the children of such decedent. And I hereby give and bequeath to my said children S. B. Stewart, of Armstrong county, Texas, Charles Stewart, of Fergus county, Montana, Ambrose Stewart, Prescott, Arizona, and Mrs. Sophia K. Stewart Taylor, of Armstrong county, Texas, all my personal estate and all my real estate or other property of whatsoever kind or character, wheresoever located or to be found, to each share and share alike, subject to the payment of all my just debts, and to the property heretofore bequeathed to S. B. Stewart and Charles Stewart, in paragraphs 3 and 4 hereof."

By the seventh paragraph S. B. Stewart was made sole executor, without bond, and that no action be had except to probate the will, etc. On the 28th day of December, 1906, Mary A. Stewart made her will, which in every particular is the same as that of her husband, C. W. Stewart, except the sixth paragraph, in which she devises "to my beloved grandchildren, children of my beloved sons, S. B. Stewart and Charles Stewart, and my beloved daughter, Kate Taylor, deceased," share and share alike; and is also different in that she nominated Charles Stewart and S. B. Stewart as independent executors of her will. C. W. Stewart died February 21, 1907, and S. B. Stewart in May, 1907, filed his application to probate the will of his father, C. W. Stewart, and qualified as his executor, and returned and had approved an inventory of the estate. The section of land in question was included in the inventory as the property of the estate. Mary A. Stewart died September, 1908, and in February, 1909, S. B. Stewart filed application to probate her will and to be appointed executor, which was granted, and he qualified as such executor, and in that inventory the land in question was rendered as part of the estate. The facts in this case show that S. B. Stewart knew nothing of the deed made by his father and mother, C. W. and Mary A. Stewart, September 24, 1906, until after he had probated the will. It was not delivered to him by them or placed of record until after the death of the grantors therein, and long after their wills had been probated and all debts paid out of the personal property as directed by the wills, and not until appellee Stewart went to the First National Bank of Amarillo to obtain his checks and vouchers which were in the bank preparatory to filing or making his report as executor under the two wills, when his attention was called to the envelope in which the deed was sealed up, together with some indorsements made on the envelope by the cashier when he received the deed from Mr. James, and the letter by James sealed up with the deed. G. M. James, who took the acknowledgment of C. W. and Mary A. Stewart to the deed, was justice of the peace and notary public, living at the time in Washburn. C. W. Stewart sent for James, and he and Judge Logue went to Stewart's place, and Logue wrote the deed. On that occasion there were several deeds made and signed by Stewart and his wife, and the deed to the land in question was signed last. James says at the time Stewart and his wife signed it there was no one present but the three—James, the old man, and his wife. In the presence of the wife the old gentleman said he was making the deed to Sam (S. B. Stewart), and was sure Sam would not accept it during his life; that he and his wife had lived with Sam a number of years, and he felt. that they had been an incumbrance to him more than the other children. After the acknowledgments were taken to the deed, C. W. Stewart delivered the deed to James, with the request that he (James) comply with C. W. Stewart's request, which was he—

"instructed me to put it in the First National Bank of Amarillo, with instructions to be delivered to Sam after his death, but to remain the old man's property during his lifetime. As to the words he used, I will say that he first told me to write this note to the First National Bank, explaining to them the purpose of the deed, and I wrote the note in accordance with the request. I wrote the note at Washburn in the store, but did not write it on the same day that I took the acknowledgment to the deed. I don't remember how long it was afterwards, but I wrote it the day I went to Amarillo and delivered the deed."

The witness identified the note so written. The note is dated the 27th of September, 1906.

"When he talked to me about taking it to Amarillo and depositing it with the First National Bank, he said that it would remain his property, and it was my intention to write it down as nearly as I remember it at the time what he said, just as nearly as I could, and in the words that he told me."

This note reads:

"To the First National Bank of Amarillo, Texas—Gentlemen: This deed is deposited with you under this mutual agreement that this deed is to be delivered to C. W. Stewart at any time he sees fit to demand it; but, in case he does not demand it during his lifetime, after his death this deed is to become the property of S. B. Stewart, but not until then."

James testified that the writing conveyed the idea Stewart conveyed to him in the fewest words in which he could express it. When he handed the papers to the cashier

Lowndes, the cashier said, "We had better write something on the envelope so it could be recognized at once," and he wrote, he thinks, "The property of C. W. Stewart, to be delivered to S. B. Stewart at my death. [Signed] C. W. Stewart." When asked if he did not tell counsel that the indorsement on the envelope was, "To be delivered to S. B. Stewart at my death," he stated that he believed he did tell him that, but that it struck him that it conveyed the same idea as his testimony. The indorsement was at the suggestion of Lowndes, and was not Stewart's words, and was only put on the envelope to identify the papers. The witness further stated:

"His request to me was that I put this letter—this deed—in the First National Bank, and to tell Mr. Lowndes that he was putting that deed there to be delivered to Sam at his death, but to remain his property; that he could call for it at any time during his lifetime, but if he did not call for it, and it remained in his possession, at his death to be delivered to Sam Stewart."

James also states the old gentleman said if he left this section undisposed of it would be divided among the heirs, and that Sam was entitled to more than the others; that he was leaving some other property which would be divided. Mr. Fuqua, the president of the bank, testified substantially that some time before C. W. Stewart died he talked to him about distributing his property among his children by deed. Mr. Fuqua, who appears to have been an old business friend of Mr. Stewart's advised him not to dispose of his property in that way, but suggested to him to do so by will. At that time there was a lawyer in the bank by the name of Douglas Wilson, and Mr. Fuqua recommended him to Mr. Stewart. Wilson was called, and he prepared C. W. Stewart's will in Fuqua's office at that time. Fuqua did not read the will, or did not recollect having done so. Mr. Fuqua could not recollect the date, but the will is dated November 27, 1906. Two witnesses who signed the will were then employed in the bank. Mr. Fuqua appears to have known something of the deposit of the deed in question with the bank at the time of the conversation with Stewart. C. W. Stewart told him Sam was to pay some indebtedness against that section or had done so, and that he wanted to let Sam have that land. He could not fix the time this conversation occurred with reference to making the will or any of the conversation. S. B. Stewart said he paid off the vendor's lien notes mentioned in the deed, and offered in evidence his canceled checks dated November 7, 1906, together with a letter from the cashier of the bank sending to him canceled notes, etc. S. B. Stewart did not learn of the deed until after both wills were probated. In notifying the plaintiffs that he had the deed he did not

at the time tell them of the letter placed up with the deed, as he considered it his land after his father's death. It is agreed that the personal property paid off all the debts against both estates, and after paying off the debts the executor had a surplus to make a distribution to the several children, and did make such distribution. S. B. Stewart also testified that he intended to pay the lien against the land in full, and did pay it, and secure the release and recorded it. The testimony of S. B. Stewart also shows that he filed on two sections of school land, and that his father filed on two sections and a three-quarter section; afterwards the three sections, 139, 179, and 177, were purchased, and his father executed the vendor's lien notes heretofore set out in the release. The record shows, we think, that the deed to these sections was to C. W. Stewart. S. B. Stewart and C. W. Stewart were partners in the stock business until 1905, when they closed out the business by disposing of the stock and paying off the debts of the partnership. The evidence shows that Mrs. Sophia K. Stewart Taylor, the mother of the plaintiffs and the daughter of C. W. and Mary A. Stewart, mentioned in the will, died before C. W. Stewart.

[1-3] It is urged by appellee that the delivery of the deed to the First National Bank was a present conveyance of the fee-simple title to section 177 to S. B. Stewart, with only the right to use the land during the lifetime of C. W. and Mary A. Stewart. It is elementary that, in order for a deed to operate as a conveyance, there must have been delivery with the intent and purpose on the part of the grantor to relinquish control of the deed. Steffian v. Milmo Bank, 69 Tex. 513, 6 S. W. 823. We understand, where a grantor parts with all control over his deed when he delivers it to a third person for delivery to his grantee on the grantor's death, the conveyance takes immediate effect, and vests in the grantee title to commence after the grantor's death, but otherwise it does not. Griffis v. Payne, 92 Tex. 293, 47 S. W. 978; s. c., 22 Tex. Civ. App. 519, 55 S. W. 757.

The case of Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, as we understand that case, does not hold to the contrary. In that case the verdict of the jury established the fact that the grantor deeded to his two stepdaughters certain land, and he delivered it to the cashier of a bank for safe-keeping, saying it was a deed to some land to them, to be delivered to them after his death. It was simply held in that case that such a delivery passed the title, which operated as a present conveyance, passing the title, which could not be revoked by the grantor. The court said: "It had precisely the same effect as if he had made and delivered the deed to the grantees,

conveying the fee, reserving to himself in the deed the use and enjoyment of the land for and during his natural life." When a deed is delivered unconditionally to a third party, to be delivered to the grantee after the death of the grantor, without any control of the same by the grantor, the deed takes effect by relation from the time of the first delivery. McKnight v. Reed, 30 Tex. Civ. App. 204, 71 S. W. 318, citing O'Kelly v. O'Kelly, 49 Mass. (8 Metc.) 436, and Parker v. Spencer, 61 Tex. 162.

The case of Taylor v. Sanford, 108 Tex. 340, 193 S. W. 661, is not in point on the question here involved. In that case the grantor executed the deed, filed it for record, and notified the grantee that as soon as it was recorded it would be sent to her, manifesting an unmistakable intention to give her the land and to send her the deed. There was no pretense on his part of a right to control the deed during his life, nor is there any question of revocation in that case. In that case it was an unconditional delivery and beyond the power of the grantor to recall. It may be under the case of Henry v. Phillips, supra, if C. W. and Mary A. Stewart made no other disposition of the property before their death, and if they had not demanded the deed, that at their death the property would have vested in S. B. Stewart. That case would seem to authorize such a holding, but does not authorize the holding that, if the land had been disposed of to others before death by the grantors, nevertheless the title would vest in the grantee. We do not feel justified in holding that the above case, in its holding, is dicta that if the grantor retained control of the deed during his life, if the land was not disposed of by him, the deed would pass the title to the grantee, as insisted by appellant. It would seem that the facts established by the verdict of the jury in that case rendered it unnecessary to hold further that, if they had found the deed was under the control of the grantor, such finding would not have affected the issue, but we cannot say the question was not involved in considering the case; and in reviewing the opinion of the Court of Civil Appeals therein the court bases its holding upon the case of Belden v. Carter, 4 Day (Conn.) 66, 4 Am. Dec. 185, and quotes therefrom. We select this from the Belden Case:

"The grantor delivered the deed to Wright with the reservation of a power to countermand it; but this makes no difference, for it was in the nature of a testamentary disposition of real estate, and was revocable by the grantor during his life, without an express reservation of that power."

Our Supreme Court said, after quoting from the above case, that it was immaterial whether he released control of the deed after depositing it in the bank, in order to show the purpose and intent of the grantor in the deed and in delivering it, but the court further says:

"If the deed had been taken by Patillo (the grantor) during his lifetime from the bank, and found among his effects after his death, and the land not otherwise disposed of by him, in view of his declaration to Simpson, the grantees would unquestionably take the title to the land under the deed."

The court again announces the right to assert title under deed after death of the grantor, but again qualifies that right by saying, "and the property not otherwise disposed of." The opinion clearly recognizes the right in the grantor when he retains control of the deed to otherwise dispose of the property before his death. The case of Wren v. Coffey, 26 S. W. 142, construed a deed in the usual form, with this clause added, "All our right, title, and interest in and to our homestead in said Van Winkler survey, should we not sell or dispose of the same before death," as testamentary, not a deed vesting a present estate. The grantee therein was held not to have title superior to a subsequent grantee of the grantors. That case cites and quotes from Carlton v. Cameron, 54 Tex. 77, 38 Am. Rep. 620.

While the cases in our courts are somewhat difficult to reconcile, we yet believe it is recognized in all of them, when the grantor in a deed reserves control of the deed or right to dispose of the property during his life, or when a deed is deposited with a third party, but under the control of the grantor, and not to take effect until after his death, that such control renders the instrument testamentary in character, with the right of revocation in the grantor. De Bajligethy v. Johnson, 23 Tex. Civ. App. 272, 56 S. W. 95; Hanning v. Hanning, 24 S. W. 695.

The appellee cites cases such as McLain v. Garrison, 39 Tex. Civ. App. 431, 88 S. W. 484, 89 S. W. 284, 112 S. W. 773. This case, and like cases, construe a deed with all formal requisites of a deed except the clause, "This deed is to take effect at my death and not before." The case is largely based upon the construction of the statute. article 1111, R. C. S., which provides: "An estate or freehold or inheritance may be made to commence in futuro, by deed or conveyance, in like manner as by will." In the case of Griffis v. Payne, supra, the Supreme Court held the above article did not apply in that case. The question there depended on whether there was a delivery with or without retaining control of the deed by the grantor, as in this case. On motion for rehearing, in the case of McLain et al. v. Garrison, reported in 39 Tex. Civ. App. 431, 89 S. W. 284, Judge Fisher set out in full the opinion in Abney v. Moore, 106 Ala. 131, 18 South. 61, and, as pertinent to the inquiry here, we quote from the latter case:

"Wills are ambulatory during the life of the testator, and are necessarily revocable; but deeds take effect by delivery, and are operative and binding during the life of the grantor. As was said in Croker v. Smith, 94 Ala. 297, 10 South. 258 (16 L. R. A. 576): 'The intention of the maker is the ultimate object of the inquiry, whether it was intended to be ambulatory and revocable, or to create rights and interest at the time of the execution which are irrevocable. If the instrument cannot be revoked, defeated, or impaired by the act of the grantor, it is a deed; but if the estate, title, or interest is dependent on the death of the testator—if in him resides the unqualified power of revocation—it is a will.' "

8 R. C. L. § 60, "Deeds," p. 995, states as a generally accepted rule in part the following:

"If the deed is not delivered (during the lifetime of the grantor), and it is held by the custodian subject to the order of the grantor, who does not part with all control over it, retaining the right to reclaim or recall it, the transaction will usually be construed as an attempted testamentary disposition, which can be effected only by an instrument in writing executed in conformity with the statute of wills." "There is no delivery when the deposit with the third person is not accompanied by an intention to part with all control over the deed. In doing so the power to revoke or to claim the deed must be given up and all power over it surrendered." Devlin on Real Estate, "Deeds," c. 12, vol. 1, p. 384, § 261a and 260 (3d Ed.); Moore v. Trott, 156 Cal. 353, 104 Pac. 578, 134 Am. St. Rep. 131; notes to Jackson v. Jackson, Ann. Cas. 1915C, pp. 378, 380.

Belden v. Carter, 4 Day (Conn.) 66, 4 Am. Dec. 185, denies the necessity of the grantor parting with all control and dominion over the deed. The Connecticut Supreme Court in the case of Grilley v. Atkins, 78 Conn. 380, 62 Atl. 337, 4 L. R. A. (N. S.) 816, criticizes that case, and says: "The ruling upon this last point in the above case is opposed to the overwhelming weight of authority. * * * And it would not probably be followed in this state to-day. Be that as it may, our Supreme Court has followed it, but in doing so it has not taken the power of the grantor from him during his lifetime to dispose of the property where he retains control of the deed.

[4, 5] Under the facts of this case we do not see how there could be any serious question that C. W. Stewart retained the deed under his control during his lifetime. The deed was to be delivered to him at any time he saw proper to demand it. Clearly, this was not an unconditional delivery to the bank to hold for S. B. Stewart. The notes mentioned in the deed which the grantee was to pay were paid before the grantor's death, and the interest in the land by virtue of the notes was released and quitclaimed to C. W. Stewart. These notes were also a lien on section 179, bequeathed to S. B. Stewart in the will, as well as upon section 177. The wills bequeathed this section to S. B. Stewart instead of section 177. In order to pass the present title to S. B. Stewart there must have been an unconditional delivery, and until there was such delivery no title vested by it. At any time before C. W. Stewart's death he could recall the deed or he could otherwise dispose of the land. By instructions to James it is manifest the deed was not to be delivered until after the grantor's death. The bank was to hold the deed subject to the control of C. W. Stewart. This clearly was not a present delivery, and evidences clearly it was not the intention of the grantors that it should be such a delivery. If at his death he had not otherwise disposed of the property with the deed still left in the bank, it may be conceded, under the holdings of our Supreme Court, that title would have vested by it. We think the wills of C. W. and Mary A. Stewart disposed of this property before their death. That right they had reserved when they deposited the deed in the bank subject to their control. The wills manifest a desire to dispose of all the property of which the testators died possessed. They desired their debts paid out of the personal property, but, if not sufficient, then they were to be paid out of the proceeds of section 177; and the concluding sentence of paragraph 6 gives and bequeaths to the children and the grandchildren "all my personal estate, and all my real estate," "share and share alike," subject to the debts, "and subject to the property heretofore bequeathed to S. B. Stewart and Charles Stewart in paragraphs 3 and 4 hereof." The lands mentioned in paragraphs 3 and 4 were excepted from the devise to all the children of all their property. Argument would not make more clear the fact that in their lifetime C. W. and Mary A. Stewart disposed of the land of which they retained the deed theretofore made under their control. They gave their son section 179 in their wills instead of section 177. The evidence in this case is that section 179 was improved, while section 177 appears to have been only a grazing section. After probating the will appellee Stewart lived on section 179. That section was also liable for the vendor's lien notes which Stewart says he paid.

In addition to that fact, the record warrants the conclusion that there was a section of land, No. 102, which his father had filed on as school land, and which Stewart owned at the time of this trial. It is evident from this record that by the will the parents gave to S. B. Stewart more than they did to the others, unless it was Charles. C. W. Stewart evidently took the advice of his banker, and disposed of his property by will. It is manifest that he acted at once on the advice, as the lawyer in the bank was at once called and drew up the will. There is nothing to

show that S. B. Stewart had any right to section 179, except by the payment of the notes against that section and others. It is not at all probable from this record that it was the purpose or intent of either C. W. Stewart or his wife to give by deed after their death section 177, and also to give section 179 by will to S. B. Stewart. On the face of the facts as shown by this record, this would have been grossly in excess of what the other children received. The others would have had but little from the personal property, as it took nearly all that to pay the debts; only a very small sum from the proceeds was left after paying the debts.

[6] The statute of three years' limitation set up by the appellee S. B. Stewart is not applicable. His claim is not through a regular chain of transfers from and under the sovereignty of the soil. The chain from and under the sovereignty of the soil under which he claims was broken by the wills of his grantors before any title could have vested in him. Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S. W. 1139; St. Louis Union Trust Co. v. Harbaugh, 205 S. W. 496 (11).

[7, 8] The appellants instituted their suit against S. B. Stewart for the land less than five years after he obtained and filed the deed to himself from C. W. and Mary A. Stewart. Hence as to appellants the five-years statute will not apply. It would not run against the minors, in whom the will vested an interest; as to the adults who did not answer the judgment by default will preclude their interest, and limitation as to them becomes immaterial.

[9, 10] To S. B. Stewart's plea of subrogation, the appellants interposed the defense of two, four, and ten years' statutes of limitation. If S. B. Stewart paid the vendor's lien notes on the land owing by his father, he did so in October or November, 1906. This suit was not instituted until 1915. He did not claim the land adverse to the appellants until April, 1911. If he made this payment to protect any interest he had in the land, it was upon an implied contract arising between him and his father, and subject to be barred by the two-years statute of limitation. Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528; Darrow v. Summerhill, 93 Tex. 92, 53 S. W. 680, 77 Am. St. Rep. 833; Summerhill v. Darrow, 94 Tex. 71, 57 S. W. 942; Darrow v. Summerhill, 24 Tex. Civ. App. 208, 58 S. W. 158.

There was no obligation upon him to pay the lien, and if he did so it was voluntary on his part. It was not at that time an obligation of his, and was not a lien on land owned or claimed by him. There was no agreement that he should pay it and be subrogated to the rights of the lienholder. He took a release to his father, reciting payment, and recorded it, and such payment gave him no right of sub-

rogation, in equity or in law. The assumption of the debt was never accepted by him; in fact, he knew nothing of this deed until long after he paid the notes, and after the wills had been probated, and he qualified as executor. But if he knew and accepted under this deed, this would not give him a right of subrogation. McDowell v. Jones, 42 Tex. Civ. App. 260, 93 S. W. 476. He sets up the right of subrogation as vesting him with the title. The right of subrogation did not give him title to the land. In order to stand in the shoes of the original vendors of C. W. Stewart, he must have obtained a conveyance from them of the legal title held to secure the payment of the notes. This he did not do. The mere showing that he paid the notes gave him neither a lien by subrogation nor title. We believe the interest sued for by appellants passed to them by the will, and the court erred in not so charging the jury, as requested. The case will be reversed, with direction that the trial court enter up a judgment, decreeing to the appellants herein and plaintiffs below the interests to which they are entitled under the wills of their grandparents, and a judgment for such interest as the minors, represented by the guardian ad litem, are entitled to under the wills, and the court will decree a partition of the land to be made in accordance with law. The minors are not appealing, and have not cross-assigned on this appeal; but they are by law wards of the court, and it is the duty of the court, as we conceive it, to see that their interests are protected. Their interests, under the pleadings and evidence in the case, are in common with the plaintiffs and under the same right. As to the adults who permitted judgment by default, the judgment will be affirmed.

Reversed in part and affirmed in part.