CLARISSA B. ABBOTT

*vs.*

OSCAR HOLWAY, administrator on the estate of JAMES ABBOTT.

Kennebec.    Opinion June 4, 1881.

*Deed.    Feoffment in futuro.    Devise.    Estate in remainder.    Waste.*

Where a deed contains a provision that it is not to take effect and operate as a conveyance until the grantor's decease, and not then if the grantee does not survive him, but if the grantee do survive, it is to convey the premises in fee simple, with words appropriate and consistent with this provision in the *habendum* and covenants, it will be upheld as creating a feoffment to commence *in futuro*, and will give the estate in fee simple to the grantee on the happening of the contingency named, the execution and record of the deed operating in the same manner as a livery of seizin at the grantor's decease.

Such a deed is something more than a devise in a will, it conveys to the grantee a contingent right which unlike the interest of a devisee in the lifetime of the testator, cannot be taken from him.

Such a deed negatives the idea of an estate in remainder for the benefit of the grantee and a reservation of a life-estate to the grantor, and the grantee takes no such interest in the premises during the lifetime of the grantor as will enable him to maintain an action on the case in the nature of waste against the administrator of the grantor for acts done by him in his lifetime after making the deed.

ON REPORT.

This is an action on the case for waste. The writ is dated September 28th, 1878.

The plea is the general issue and brief statement denying the plaintiff's title and claim.

At the trial it was admitted that James Abbott was, on the 30th of April, 1872, and long had been, the husband of the plaintiff; that he died May 5th, 1875 ; that the defendant is the administrator on his estate ; that he owned, on the 30th of April, 1872, and long had owned, the premises described in the writ, a valuable farm in Pittston, upon which was a large timber and wood lot; that he continued to live on the farm with his wife managing and taking the crops thereof until his death, she now surviving him ; that in the winter and spring of 1875, without the consent and against the remonstrance of the plaintiff, he caused to be cut and hauled to market, a quantity of mill logs, cut for that purpose, and not for fencing or repairs.

Since Abbott's death, his administrator has sold the lumber made from the logs and received the money therefor.

The plaintiff put in evidence the deed from James Abbott to her, dated April 30th, 1872, embracing the premises described in the writ and upon which the alleged waste was committed, and proved its execution and delivery on the day of its date, and its record in the Kennebec registry on the same day by plaintiff's procurement.   It is made part of the case.

(Deed.)

"Know all men by these presents, that I, James Abbott of Gardiner in the county of Kennebec, in consideration of one dollar paid by my wife Clarissa B. Abbott, and for the purpose of providing and securing to my said wife a comfortable support in the event of my decease during her life, the receipt whereof I do hereby acknowledge, do hereby give, grant, bargain, sell and convey, unto the said Clarissa B. Abbott of said Pittston, her heirs and assigns forever a certain lot of land situate in said Pittston and bounded      .      .      .      .      .

"This deed is not to take effect and operate as a conveyance until my decease, and in case I shall survive my said wife, this deed is not to be operative as a conveyance, it being the sole purpose and object of this deed to make a provision for the support of my said wife if she shall survive me, and if she shall

survive me then and in that event only this deed shall be operative to convey to my said wife said premises in fee simple. Neither I, the grantor, nor the said Clarissa B. Abbott, the grantee, shall convey the above premises while we both live without our mutual consent. If I, the grantor, shall abandon or desert my said wife then she shall have the sole use and income and control of said premises during her life.

"To have and to hold the aforegranted and bargained premises, with all the privileges and appurtenances thereof to the said Clarissa B. if she shall survive me, her heirs and assigns, to their use and behoof forever. And I do covenant with the said Clarissa B. her heirs and assigns, that I am lawfully seized in fee of the premises; that they are free of all incumbrances; that I have good right to sell and convey the same to the said Clarissa B. if she shall outlive me, to hold as aforesaid at my decease. And that I and my heirs shall and will warrant and defend the same to the said Clarissa B. if she shall survive me, and her heirs and assigns forever, against the lawful claims and demands of all persons.

"In witness whereof, I, the said James Abbott, have hereunto set my hand and seal, this thirtieth day of April in the year of our Lord one thousand eight hundred and seventy-two.

JAMES ABBOTT.   [Seal.]"

Signed, sealed and delivered in presence of
    N. M. WHITMORE,
    L. CLAY."

Duly acknowledged and recorded.

*A. P. Gould,* for the plaintiff.

The deed from James Abbott to Clarissa B. Abbott, conveyed a freehold to take effect *in futuro* and was a valid conveyance. *Wyman* v. *Brown,* 50 Maine, 139; *Jordan* v. *Stevens,* 51 Maine, 78; *Drown* v. *Smith,* 52 Maine, 141.

The deed seems to have a double intention; first, to make provision for her if she should survive him; and second, that she should also have and possess the estate during his life if he deserted her.

Waste of the estate by the grantor, after the execution of such a deed, is a palpable fraud upon the settlement; and even where the statute would not permit an action of law to recover damages for such waste (as our statute does) they might be recovered in a court of equity. *Powlett* v. *Dutchess of Bolton*, 3 Ves. Jr. 374; Greenl. Cruise, 130; *King* v. *Sharp*, 6 Humph. 55; *Marquis of Landsdowne* v. *Marchioness of Landsdowne*, 1 Mad. 140, [116]. See note (2) to case *Lee* v. *Alston*, 1 Ves. Jr. 82. See also notes to *Pigott* v. *Bullock*, 1 Ves. Jr. 483, 484.

But we do not have to resort to equity. We are entitled to maintain this action by R. S., c. 95, § § 3, 4.

All that *Hunt* v. *Hall*, 37 Maine, 363, decides is that a contingent remainder-man cannot maintain an action of waste, under the statute while the contingency exists. But when the title becomes absolute, may he not then maintain waste against the tenant for life? Judge Jackson seems to intimate that he can. Jackson on Real Actions, 329; see also *Greene* v. *Cole*, 2 Saunders, 252.

Counsel further cited: *Foster* v. *Mansfield*, 3 Met. 412; *Hatch* v. *Hatch*, 9 Mass. 307; 2 Wash. R. P. 612, (2d ed.) *Jackson* v. *Dunsbach*, 1 Johns. Cas. 96; *Richardson* v. *York*, 14 Maine, 216; *Cook* v. *Mason*, 4 Mason, 488.

*J W Bradbury*, for the defendant.

Nothing passed by the deed from Abbott to his wife. It did not convey a contingent remainder. It might never take effect, there was no certainty that it ever would. Abbott retained the fee in himself. He did not part with the title. The plaintiff derived no estate that she could convey. An estate is vested when there is an immediate fixed right to a present or future enjoyment. Fearne on Rem. 1, c. 8.

The estate remained to Abbott. He had the present enjoyment and it might descend to his heirs.

The learned counsel has been able to refer to no case in this country where a deed has been sustained when by its terms the title might forever remain in the grantor and his heirs. The

case of *Powell* v. *The Duchess of Bolton* does not bear upon this question.

A contingent remainder is a possible remnant of an estate that passes from the grantor at the time he conveys the rest of the estate. 1 Ins. 143 ; 1 Fearne on Rem. § 747.

The instrument is a mere executory agreement — a promise by Abbott to make a title after he should die. It is an attempt to make an executory devise in a manner not authorized by law, and against sound principles of public policy. If sustained as a conveyance it would amount in effect to a partial repeal of the statute of wills.

BARROWS, J. The plaintiff's right to maintain this action must depend ultimately upon the construction to be given to the deed or instrument under which she claims title, and upon the force and effect of the terms used therein to define the interest which she acquired by virtue thereof.

Our statutes (R. S., c. 73, § 1,) provide that "a person owning real estate and having a right of entry into it, whether seized of it or not, may convey it, or all his interest in it, by a deed to be acknowledged and recorded as hereinafter provided." Detailed regulations as to the mode of execution and as to the force and effect of conveyances thus made and recorded, follow this general provision in some thirty sections, more or less. Can it be doubted that under such statutes the owner of real estate can convey in the manner prescribed, such part or portion of his estate as he and his grantee may agree, subject only to those restrictions which the law imposes as required by public policy, but relieved from the technical doctrines which arose out of ancient feudal tenures, and all the restrictive effect which they had upon alienations. Why prevent the owner in fee simple from agreeing with his grantee (and setting forth that agreement in his conveyance) as to the time when, and the conditions upon which, the instrument shall be operative to transfer the estate from one to the other?

In substance our law now says to a party having such an interest in real estate as is mentioned in R. S., c. 73, you may convey that interest or any part thereof in the manner herein

prescribed with such limitations as you see fit, provided you violate no rule of public policy, and place what you do on record so that all may see how the ownership stands.

In the discussion of the effect of the statute of uses and of our own statutes regulating conveyances of real estate in *Wyman* v. *Brown*, 50 Maine, 139, (a leading case upon the validity of conveyances under which the grantee's right of possesssion was to accrue not upon delivery of the deed but at some future day), WALTON, J. remarks: "We are also of opinion that effect may be given to such deeds by force of our own statutes, independently of the statute of uses. Our deeds are not framed to convey a use merely, relying upon the statute to annex the legal title to the use. They purport to convey the land itself, and being duly acknowledged and recorded, as our statutes require, operate more like feoffments than like conveyances under the statute of uses." In this connection he quotes Oliver's Conveyancing, touching the operation and properties of our common warranty deed to the effect that in the transfer authorized by the statute in this mode, "the land itself is conveyed as in a feoffment except that livery of seizin is dispensed with upon complying with the requisitions of the statute, acknowledging and recording, substituted instead of it."

And he concludes that deeds executed in accordance with the provisions of our statutes and deriving their validity therefrom may be upheld thereby, as well as under the statute of uses, notwithstanding they purport to convey freeholds to commence at a future day.

In other words the mere technicalities of ancient law are dispensed with upon compliance with statute requirements. The acknowledgment and recording are accepted in place of livery of seizin, and it is competent to fix such time in the future as the parties may agree upon as the time when the estate of the grantee shall commence. No more necessity for limiting one estate upon another, or for having an estate (of some sort) pass immediately to the grantee in opposition to the expressed intention of the parties.

The feoffment is to be regarded as taking place, and the livery of seizin as occurring at the time fixed in the instrument, and the

acknowledgment and recording are to be considered as giving the necessary publicity which was sought in the ancient ceremony. The questions, did anything pass by the conveyance, if so, what, and when, are to be determined by a fair construction of the language used, without reference to obsolete technicalities. The instrument will be upheld according to its terms, if those terms are definite and intelligible, and not in contravention of the requirements of sound public policy.

The defendant, while he does not controvert the doctrine of *Wyman* v. *Brown*, insists that nothing passed by the deed of James Abbott to his wife, because according to its terms it was left uncertain whether the instrument would ever take effect as a conveyance, that not even a contingent remainder which the plaintiff claims, passed when the deed was made and delivered, that it amounts at most, to a mere executory agreement, and any recognition of its validity is contrary to public policy, because it is an attempt to evade the statutes regulating the making and execution of wills. But the instrument was duly executed by the defendant's testator, a man capable of contracting, and having an absolute power of disposition over his homestead farm, subject only to the rights of his existing creditors. It was duly recorded so that all the world might know what disposition he had made of a certain interest in it, and what was left in himself. If operative at all, it operated differently from a will. A will is ambulatory, revocable. Whatever passed to the wife by this instrument became irrevocably hers.

We fail to perceive that any principle of public policy, or anything in the statute of wills calls upon us to restrict the power of the owner of property unincumbered by debt, to make gifts of the same, and to qualify those gifts as he pleases, so far as the nature and extent of them are concerned. Public policy in this country has been supposed rather to favor the facilitation of transfers of title, and the alienation of estates, and the exercise of the most ample power over property by its owner that is consistent with good faith and fair dealing. The selfish principle may fairly be supposed to be, in all but exceptional cases, strong enough to prevent too lavish a distribution of a man's property by way of gift.

The learned counsel for defendant speaks of this instrument as "an attempt to make an executory devise," "a mode of devising real estate." It is something more and different, and if the doctrine of *Wyman* v. *Brown* is to be maintained, it gives to the grantee a contingent right in the property which (unlike the interest of a devisee in the lifetime of the testator) cannot be taken from her, and may, upon the performance of the condition make her the owner of the premises in fee simple, according to its terms. It is argued that if the court give effect to this mode of transmitting a title to real estate, it will lead to uncertainty as to the rights of the respective parties, and to litigation between the heirs of the grantor and grantee, that "it would tie up estates, embarrass titles, and impair the simplicity of our modes of conveyance," without producing any compensatory benefit. Why these results should follow (when the validity and effect of such conveyances has once been determined) in any greater measure than they are liable to follow any kind of family settlement is not apparent. What we do is precisely this. We uphold a conveyance in conformity with the agreement of the parties therein expressed, that the title of the grantee shall accrue, not upon the delivery of the deed, but upon the happening of a certain event (the proof of which is commonly easy) at a future time specified in the recorded conveyance. Why should harm come of it any more than from a lease made to run from a future day certain?

In substance the grantor says to the grantee, I give you this conveyance made and executed in the manner prescribed by our statute, so that you may have an irrevocable assurance that if you outlive me the property therein described shall be yours in fee simple, from and after my decease, in like manner as if you took the same by livery of seizin on that day, under a feoffment from me, the statute provisions for a recorded deed dispensing with that ceremony. Doubtless this is all contrary to the ancient doctrine, which is thus stated in Greenleaf's Cruise, vol. IV, p. *48 : "A feoffment cannot be made to commence *in futuro*, so that if a person makes a feoffment to commence on a future day, and delivers seizin immediately, the livery is void, and nothing more

than an estate at will passes to the feofee." What was the foundation of this doctrine? It is stated *ibidem* thus : "This doctrine is founded on two grounds ; first, because the object and design of livery of seizin would fail if it were allowed to pass an estate which was to commence *in futuro;* as it would, in that case, be no evidence of the change of possession ; secondly, the freehold would be in abeyance which is never allowed when it can be avoided." But, given the system of recorded conveyances for which our statutes provide, the ceremony of livery of seizin becomes of no importance as an evidence of the change of possession ; and we shall find our natural horror of a freehold in abeyance (if it could be demonstrated that such a result would follow from allowing a freehold to take effect *in futuro*) greatly mitigated by the circumstance that here and now it is no longer necessary "that the superior lord should know on whom to call for the military services due for the feud," and so, in any event, the defence of the commonwealth will not be weakened ; and by the further circumstance that "every stranger who claims a right to any particular lands, may know against whom he ought to bring his præcipe for the recovery of them," by a simple inspection of the public records, and proof of actual possession.

The doctrine of *Wyman* v. *Brown* is a good illustration both of the maxim, *cessante ratione, cessat etiam lex,* and of the changes wrought in the common law by statutory provisions.

In Virginia the doctrine that a feoffment cannot be made to commence *in futuro* was long ago done away with by statute. Tate's Dig. p. 175. While it does not form part of the decision in *Wyman* v. *Brown*, this matter underwent a careful scrutiny, and, upon full consideration, the court agreed that our statute system of registered conveyances brought about the same result here.

We are at liberty, then, to give to the language used by the grantor in a deed, its obvious meaning, without invalidating the deed, to say that it shall operate as the parties intended, and carry an estate to commence *in futuro* if they so agree, without the necessity of resorting to any subterfuges under which the estate thus created to commence *in futuro* may be recognized as

existing only by way of remainder or by virtue of some imputed covenant to stand seized.

A single reading of this conveyance of James Abbott to his wife is sufficient to satisfy one that it was no part of the intention or expectation of either, that the wife acquired thereby any interest in the homestead farm during the life of the grantor except as expressly therein declared, to wit, a right to the "use, income and control of said premises during her life," in case the husband deserted her (which he did not do), and besides this, an irrevocable right to the same in fee simple, in case she survived her husband, her estate to commence at his decease.

The language of the deed differs widely from that of any of the conveyances which have been sustained as passing an estate in remainder to the grantee with a life-estate in the grantor reserved. If the object of the draftsman had been to exclude the idea that the conveyance should have any force until the time therein appointed, in other words, to have it take effect as a feoffment made at the time fixed *in futuro*, to convey, as of that date, an estate in fee simple and to have no other operation, it is difficult to see how he could have made that object plainer in words.

"This deed is not to take effect and operate as a conveyance until my decease, and, in case I shall survive my said wife, this deed is not to be operative as a conveyance . . . if she shall survive me, *then*, and in that event only, this deed shall be operative to convey to my said wife said premises *in fee simple*." Note also the language of the *habendum* and covenants. A conveyance thus framed cannot give the rights of a remainder-man presently to the grantee, nor so operate forthwith, as a conveyance as to convert the holding of the grantor from that time forward into a mere tenancy for life.

Such language bears little resemblance to the stipulation in the deed which was under consideration in *Drown* v. *Smith*, 52 Maine, 142, "but the said (grantee) is not to have or take possession till after my decease; and I do reserve full power and control over said farm during my natural life."

It differs quite as much from the provision in the case of *Wyman* v. *Brown*, to the effect that Mrs. Brown was "to have quiet possession, and the entire income of the premises until her decease." *Drown* v. *Smith*, however, is an authority which relieves us on the question whether stipulations which on the face of them are not consistent with terms previously used importing a present conveyance, will avoid the deed. There is an apparent contradiction in saying, I convey this property to you, but this is no conveyance until, &c. nor unless, &c. But the modern cases like *Drown* v. *Smith*, indicate that if the intent, taking the whole together, is clear and intelligible, the court will give effect to it notwithstanding some apparent repugnancy. If a deed can be upheld where, as in *Drown* v. *Smith*, the grantor reserves to himself "full power and control over said farm during my (his) natural life," on the face of it including the power of disposition, we may give its fair and just effect to one framed, as this is, to convey an estate in fee simple to the grantee, *to commence* at the decease of the grantor, provided the grantee outlives him; and the true effect seems to be that of a feoffment under which the execution and record of the deed operate in the same manner as livery of seizin made at the time of the grantor's decease. It gives no right of action for waste committed during the grantor's life. While this grantor lived he could do anything with the homestead farm not inconsistent with the right which he had conveyed to his wife to take it from the time of his decease, if she survived him, as the owner thence forward in fee simple.

If the testimony of Lapham and Palmer represents truly the acts of which the plaintiff complains as waste, her suit, were it otherwise well founded, would fail for want of proof of anything which amounts to waste according to the best considered decisions in this country. See *Drown* v. *Smith*, *ubi supra*, and cases there cited.

*Plaintiff nonsuit.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and SYMONDS, JJ., concurred.