JOHN B. McLAIN ET AL. v. MRS. J. B. GARRISON ET AL.

Decided May 17, 1905.

**Deed Effective on Death—Conveyance or Testament.**

An instrument in the usual form of a warranty deed, attested by one witness and acknowledged and recorded, but containing the clause: "to have and to hold after my death and not before," being insufficient as a will, but evidently designed to have some effect, should be construed as a deed, and held to pass title good on the death of the grantor.

Appeal from the District Court of Hill County. Tried below before Hon. Nelson Phillips.

*Derden & Killough* and *Vaughan & Works,* for appellant.—An instrument conveying title to land in presenti, but providing that the estate should begin some time in the future, that is, the vendee should not go into the immediate possession of the land thus conveyed, but that the grantor should remain in the possession and have the use thereof during his life, is not testamentary in character, but is a deed conveying an estate to commence in futuro. Sayles' Rev. Stats., 1897, art. 632; Chrisman v. Wyatt, 7 Texas Civ. App., 40; Leslie v. McKinney, 38 S. W. Rep., 378; Carpenter v. Hannig, 34 S. W. Rep., 774; Jenkins v. Adcock, 5 Texas Civ. App., 470.

As to the construction to be given the above instrument see Hancock v. Butler, 21 Texas, 804.

A written instrument reciting as its consideration love and affection, and containing the usual granting, habendum, and warranty clauses, and concluding with a reservation of a life estate to the grantor, "But this deed is to take effect at my death, and not before," is a deed and not a will, especially in view of Sayles' Revised Statutes, article 632, which permits the creation by deed of freehold estates to commence in futuro, and therefore the special charges requested, mentioned in the above assignments of error, should have been given. Same authorities.

The court did not err in holding and in construing the instrument of date January 11, 1893, executed by John M. McLain to Catherine Flora McLain and Mattie Lou McLain to be a deed, as said instrument

conveyed the title to the property therein described, the estate to begin in the future. Sayles' Rev. Stats., art. 632; Martin v. Faries, 22 Texas Civ. App., 540; Leslie v. McKinney, 38 S. W. Rep., 378; Chrisman v. Wyatt, 7 Texas Civ. App., 40; Carpenter v. Hannig, 34 S. W. Rep., 774; Jenkins v. Adcock, 5 Texas Civ. App., 470; Lockridge v. McCommon, 90 Texas, 234.

As to proper construction to be given the instrument involved in this suit, see Hancock v. Butler, 21 Texas, 804.

*Wear, Morrow & Smithdeal,* for appellees.—The action of the trial court in holding that the instruments under which John B. McLain and H. N. McLain claimed the 403 acre tract of land were not effective as deeds, was the correct construction of the instruments mentioned. Martin v. Faries, 22 Texas Civ. App., 540; Mathews v. Moses, 21 Texas Civ. App., 496; Leslie v. McKinney, 38 S. W. Rep., 378; Chrisman v. Wyatt, 7 Texas Civ. App., 40; Carpenter v. Hannig, 34 S. W. Rep., 744; Jenkins v. Adcock, 5 Texas Civ. App., 470; Millican v. Millican, 24 Texas, 441; Crain v. Crain, 21 Texas, 793; Epperson v. Mills, 19 Texas, 68, 59 S. W. Rep., 577.

It appearing that John M. McLain died intestate, and that the plaintiffs were his heirs, and that before his death he owned the tracts of land described in the instrument dated the 11th day of January, 1898, which instrument is in the form of a deed in consideration of love and affection, to Catherine Flora McLain and Mattie Lou McLain, except that it contains the following language:

"To have and to hold, after my death and not before, to said Catherine Flora McLain during her lifetime or widowhood, and in either event to revert to my daughter, Mattie Lou McLain; if the said Mattie Lou McLain should die without leaving any bodily heirs, then the property conveyed in this deed is to revert to my two sons, John B. McLain and H. N. McLain, one-half to each, and their children forever."

The court erred in holding said instrument effective as a deed and in failing to instruct the jury that said instrument was testamentary and that it did not convey the three hundred and fourteen acres of land described therein. Same authorities.

A deed whereby a grantor conveys and covenants certain lands at his death will be construed as an estate in fee simple to take effect after life estate reserved in the grantor by implication. So a father may make a valid deed of gift to his children to take effect after the death of himself and his wife and not till then. 13th Cyc. of L. & P., 671. Citing Vinson v. Vinson, 4 Ill. App., 138; Fish v. Sawyer, 11 Conn., 545; Coley v. Coley, 19 Conn., 114; Banks, Admr. v. Marksberry, 13 Ky. (3 Litt), 275; Martin v. Cook, 102 Mich., 267, 60 N. W. Rep., 679; Dennett v. Dennett, 40 N. H., 498; Duncan v. Self's Admr., 4 N. C. (1 Murph.), 466; Hollomon v. Hollomon, 12 La. Ann., 607; Watson v. Cressey, 79 Me., 381, 10 Atl. Rep., 59; Steel v. Steel, 4 Allen, 417.

FISHER, CHIEF JUSTICE.—As the heirs of John M. McLain, deceased, who died intestate, the appellees brought this suit in trespass to try title against the appellants John B. and H. N. McLain and Mrs.

Katherine Flora McLain and Mattie Lou McLain, to recover certain lands described in deeds executed by John M. McLain on the 11th day of January, 1898, to the appellants. On the 11th day of January, 1898, John M. McLain executed to John B. McLain and H. N. McLain each deeds conveying the lands therein described, which instruments were by the trial court construed to be testamentary in character, and, in view of this fact, the jury were instructed to return a verdict against John B. and H. N. McLain in favor of appellees. Also on the 11th day of January, 1898, John M. McLain executed to the appellants, Mrs. Katherine Flora McLain and Mattie Lou McLain a deed conveying to them the lands described, which instrument the court held to be a deed, and accordingly instructed a verdict in favor of appellants Katherine and Mattie McLain.

The question as to the construction of these instruments is the principal, if not the only one, presented in this appeal. The appellants contend that the two first instruments mentioned are not testamentary in character, but are deeds, and were so intended to operate as deeds by the grantor, John M. McLain. The appellees by cross assignment contend that the instrument executed by John M. McLain to Mrs. Katherine Flora McLain and Mattie Lou McLain, is also testamentary in character, and is not a deed, as held by the trial court. The two instruments first mentioned are in words as follows:

The State of Texas, County of Hill.

"Know all men by these presents that I, John M. McLain, of the County of Hill and the State aforesaid, for and in the consideration of the sum of one dollar and love and affection to me paid and secured to be paid by H. N. McLain, my son, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said H. N. McLain an undivided half interest in four hundred and three acres of land, more or less, of the county of —— State of ——, all that certain tract of land being a part of the Joseph McGee survey in Hill County, Texas, meted and bounded as follows: (Here follows description by metes and bounds) containing 403 acres of land more or less. This deed is to take effect at my death and not before.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said H. N. McLain, and his heirs and assigns forever, and I do hereby bind my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said H. N. McLain, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand at home in Hill County, this the 11th day of January, A. D. 1898.

"John M. McLain."

"The State of Texas, County of Hill.

"Know all men by these presents that I, John M. McLain, of the county of Hill and State aforesaid, for and in consideration of the sum of one dollar and love and affection to me paid and secured to be

paid by John B. McLain, my son, as follows: Have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said John B. McLain an undivided one-half interest in 403 acres of land, more or less, of the county of Hill, State of Texas, all that certain tract of land being a part of the Jos. McGee survey in Hill County, Texas, meted and bounded as follows: (Here follows description of land by metes and bounds) containing 403 acres of land, more or less. This deed is to take effect at my death and not before.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto said John B. McLain and his heirs and assigns forever.

"And I do hereby bind my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said John B. McLain and his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand at home in Hill County, this the 11th day of January, A. D. 1898.

"John M. McLain."

The deed from John M. McLain to Katherine Flora McLain and Mattie Lou McLain is as follows:

"The State of Texas, County of Hill.

"Know all men by these presents that I, John M. McLain, of the county of Hill and State aforesaid, for and in consideration of the sum of one dollar and love and affection to me paid and secured to be paid by Katherine Flora McLain and my daughter, Mattie Lou McLain, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Catherine Flora McLain and Mattie Lou McLain of the county of Hill and State of Texas, all that certain tract or parcel of land being part of the Jos. McGee and Wesley Young surveys, meted and bounded as follows. (Here follows description of land by metes and bounds) containing 102 acres of land, 54 acres of which is in the McGee survey and about 48 acres in the Young survey.

"Also one tract commencing at stake marked A on the plat of tract number 1; thence north 60 east 1786 varas to a stake for corner; thence south 30 ——— 765 varas to a stake for corner of the McGee survey; thence south 60 west, 1344 varas to a stake for corner of the McGee survey, marked B; thence north 60 west 884 varas to the stake marked A, the place of beginning, containing 212 acres of land more or less.

"To have and to hold after my death and not before to said Catherine Flora McLain during her lifetime or widowhood, and in either event to then revert to my daughter, Mattie Lou McLain; if the said Mattie Lou McLain should die without leaving any bodily heirs, then the property conveyed in this deed is to revert to my two sons, John B. McLain and H. N. McLain, one-half to each and their children forever, the above described premises together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Catherine Flora McLain and Mattie Lou McLain as stated above, and I do hereby bind my heirs, executors and administrators to warrant and forever

defend all and singular the said premises unto the said Catherine Flora McLain and Mattie Lou McLain as stated above, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand at home in Hill County, this the 11th day of January, A. D. 1898. "John M. McLain."

Each of these instruments was witnessed at the request of the grantor by only one witness by the name of W. N. Collier; each was acknowledged in the form required by the statute before B. E. Wells, notary public, on the 11th day of January, 1898, and each was filed for registration in the county clerk's office on the 14th day of January, 1898, and duly recorded on the 17th day of January, 1898, in the deed records of Hill County.

Of course, it is conceded that in determining the effect to be given to these instruments, the intention of the maker, as gathered from the face of the documents, is the question of primary importance. The evidence in the record is to the effect that these instruments were not written by the grantor John M. McLain, but were prepared by Wells. They are only attested by one witness; therefore, in view of article 5335 and 5336 of the Revised Statutes, they could not be established or probated as wills. Therefore, if they are held to be testamentary in character they could be given no effect, and their execution was a useless and idle ceremony. It is reasonable to suppose that the maker of these instruments intended to accomplish some purpose by their execution, and that they should be given some effect as determining and fixing the rights of the parties thereto. He and the party that framed the instruments must have known that they could not be effective as wills, for the requirements of the law which were necessary to be observed in order to create documents of a testamentary nature, were not complied with; and such provision of the law, it is reasonable to suppose they were familiar with. Now, assuming that the maker intended to accomplish some purpose by the execution of these instruments, and further observing the rule that where the language of the documents admit of it, they should be most strongly construed against the maker in cases of doubt or uncertainty, the question is suggested, what construction, from the language used, would be reasonable and consistent as indicating the intention of John M. McLain in the execution of these instruments?

Eliminating the words, "This deed is to take effect at my death and not before," the instruments are practically in the form prescribed by the statute for what is sufficient to constitute a deed. The language employed contains all the elements of a deed; it grants and conveys to the grantee the interest described, and concludes with the usual habendum and warranty clauses. The only words that indicate that it was not the intention to pass a present interest are those quoted, and from this language it appears that the maker called the instrument a deed, which shows evident intention that it should have effect as a deed or as a conveyance of the land; and we are of the opinion that it was the intention by the language used to merely reserve an interest in the property during the lifetime of the grantor, and that the deeds should only become effective to disturb this right at his death.

Article 556 of the Revised Statutes provides that an estate or freehold or inheritance may be made to commence in futuro by deed or conveyance, in like manner as by will. This was construed and applied in Chrisman v. Wyatt, 7 Texas Civ. App., 40; and the court in the case of Jenkins v. Adcock, 5 Texas Civ. App., 470, had before it an instrument for construction somewhat similar in its terms to those we are called upon to construe. The instrument, in addition to the language usually contained in deeds, after naming the grantee, stated, "have granted, sold and conveyed, to take effect at my death, and by these presents do grant, bargain and sell to the said Nancy R. Adcock," then goes on and describes the land, and further states, "And at my death my interest in said land and premises is by these premises conveyed to my sister, Nancy R. Adcock, to have and to hold, etc." The court in that case construed the instrument to be a deed.

The well considered case of Wilson v. Carrico, 140 Ind., 533, is strongly in point and aptly illustrates our views upon the question under consideration. Indiana has a statute very much similar to ours, which authorizes an estate to be created which may commence in futuro. The strong similarity between the deed there under consideration and those in controversy here, together with the pertinency of the opinion, induces us to set it out in full:

Action in ejectment by appellant to recover certain real estate and to quiet title thereto. The error assigned is that the court erred in sustaining a demurrer to appellant's complaint. A condensed statement of the facts as they appear in the complaint is as follows:

"That on November 18, 1867, one Bazzle Carrico was the owner in fee simple of certain described lands situated in Sullivan County, Indiana. On that day he and his wife, Frances, duly executed to one Elza Carrico a deed for the real estate sought to be recovered in this action, said deed being as follows, to wit: 'This indenture witnesseth that Bazzle Carrico and Frances Carrico, his wife, of Sullivan County in the State of Indiana, convey and warrant to Elza Carrico, of Sullivan County, in the State of Indiana, for the sum of one hundred and fifty dollars, the following real estate, in Sullivan County, in the State of Indiana, to wit: the northeast quarter of the northeast quarter of section 31, township seven, north of range eight west, with the exception of ten acres off the east side of the forty acres, containing thirty acres, more or less. The above obligation to be of none effect until after the death of the said Bazzle Carrico and Frances Carrico, then to be in full force. In witness whereof, the said Bazzle Carrico and Frances Carrico have hereunto set their hands and seals, this 18th day of November, 1867.

Bazzle  Carrico          (seal)
               her
Frances  X  Carrico       (seal)
              mark

" 'State of Indiana,⎱
   Sullivan County. ⎰
ss:
   " 'Before me, Benson Usrey, a justice of the peace in and for said

county, this 18th day of November, 1867, came Bazzle Carrico and Frances Carrico, and acknowledged the execution of the annexed deed.

" 'Witness my hand and official seal.

" 'Benson Usrey, J. P.   (Seal.)' "

"This deed was recorded in a few days after its execution in the recorder's office of Sullivan County, Indiana.   On March 9, 1870, Elza Carrico and wife conveyed the land in controversy by a warranty deed, to appellant, for and in consideration of the sum of two hundred and fifty dollars ($250) and they provided in this deed that the land was conveyed subject of the life estate of Bazzle and Frances Carrico. This deed was also acknowledged and recorded.   Bazzle Carrico died on September 6, 1872, and his wife, Frances, died on January 11, 1892. Other facts, not necessary to be considered in the determination of this case, are omitted.   We are informed by the briefs of the parties that the trial court held the deed void upon the ground that in its character it was testamentary.   The learned counsel for the appellant denies that the deed is in any respect testamentary, and insists that by it there was a conveyance of the premises therein described to the grantee and that the subsequent and questionable clause therein contained was intended by the grantor as a reservation or postponement of the full use and enjoyment of the realty by the grantee until after the death of the grantors; that after the demise of each of these the deed in question was to be in full force, or, in other words, that the complete enjoyment of the use and occupation of said land by the provision of the clause in controversy was postponed until after the death of Carrico and wife, and was then fully to vest in the grantee.   Upon the other hand the learned counsel for the appellee say that they do not controvert but what the instrument in question was intended by the parties as a deed, and not as a will, and concede that it has all the formalities of the former.   But they contend that it was the evident purpose and intent of the grantor to reserve all the estate which he intended to convey, and that the deed was not to take effect until after the death of himself and wife, and that hence it must be held to be testamentary in its character, and therefore void, for the reason that it is not executed in accordance with requirements of the statute on wills.   The instrument in question calls for a judicial construction, and in this the court must seek for and be guided by the intention of the grantor.   And this intention must be deduced and arrived at by consideration of all of its parts, and in this construction we must observe and adhere to the rule that this deed in both the granting part and clause under consideration must be construed most strongly against the grantor and in favor of the grantee.

"It was a principle recognized by the feudal law that there should always be a known owner of every freehold estate, and that the title thereto should never be in abeyance.   Hence at common law a freehold to commence in future could not be conveyed for the reason that the same would be in abeyance from the execution of the conveyance until the future estate of the grantee should vest.

"Under the statute of this State a freehold estate may be created to commence in futuro; section 2959 Revised Statutes, 1881, section

3379, Revised Statutes, 1894; and hence the common law principle above stated has been entirely abrogated. This deed is in the statutory form, and in the granting part accords with the provisions of section 2927, Revised Statutes, 1881, section 3346, Revised Statutes, 1894, and contains what are, by law, made operative words of conveyance, and in effect transfers all the estate or interest of the grantor in the lands in suit to the grantee. The terms "convey' and 'warrant,' when given their legal purport or acceptation, fully indicate an intention to convey a present estate to the grantee, and defend the title thereto; and in no way is it apparent or to be inferred from these words that the grantors intended to devise the real estate in question. The instrument was acknowledged and recorded in like manner as are other deeds; therefore we fail to recognize anything which signifies that it was intended to serve the purpose of a will. The question then arises what was the purpose intended to be served by the inapt expression, namely: 'To be of none effect until after the death of said Bazzle Carrico and Frances Carrico, then to be in full force.'

"It is evident that the drafting of the indenture in question was not skillfully performed, and that thereby it very closely approximates to what may be termed the 'danger line' by which a judicial construction might result in adjudging the deed to be a nullity.

"While it may be said in regard to the point under consideration that the authorities 'fight on both sides' of the question; however, we find that in the later decisions the courts are inclined to uphold a deed of this character, if upon a reasonable interpretation of all its parts it can be said that the grantor did not intend to create, or in other words execute, that which must be construed and held to be void.

"In construing written instruments courts frequently do—and properly, too—give to an expression a meaning different from that which it ordinarily bears in order to import sense into it and make it speak that which, upon inspection of the whole, the parties really intended that it should.

"We find that there is no ambiguity in the granting clause of the deed in the case at bar, and consequently, we are left free to effectuate the intention of the grantor expressed in the subsequent clause or condition. The grantors had, as we have seen by operative words, clear and significant, conveyed an interest or fee *in praesenti* to the grantee; having done this they could not, in legal parlance 'blow hot and cold;' or, in other words, reserve or take back that which they had granted.

"In the case of Owen v. Williams, 114 Ind., 179, the instrument in contest was in the form of a deed and in the granting clause, by its terms, 'did convey and warrant to Williams after my decease and not before.' This court held that the phrase, 'after my decease and not before,' did not make the deed testamentary, but was meant and operated to show that the grantee's use and enjoyment of the realty would not begin under the deed until after the death of the grantor.

"In the case of Cates v. Cates, 135 Ind., 272, the deed therein in controversy was also in the statutory form, but contained the following reservation: 'The grantor, Prior Cates, hereby expressly excepts and reserves from this grant all the estate in said lands, and the use, occupation, rents and proceeds thereof unto himself during his natural life.'

This court in that case, upon a full review and consideration of many authorities upon the question involved, held that such an instrument must be construed as conveying a present interest in the real estate, the full enjoyment of which was postponed until after the grantor's death.

"In the case of White, Administrator, v. Hopkins, 80 Ga., 154, cited in Cates v. Cates, supra, the deed contained this clause or condition: 'The title to the above described tract of land to still remain in the said Lemuel Hopkins (grantor) for and during his lifetime, and at his death to immediately vest in the said Lewis Hopkins (grantee).' It was held by the Supreme Court of Georgia in that case that an absolute title was, by this deed, conveyed to the grantee; that it passed a present interest in the land, and took effect immediately, and after its execution it was irrevocable by the grantor.

"In Graves v. Atwood, 52 Conn., 512, the deed contained the following: 'The condition of this deed is such that I hereby reserve all of my right, title and interest in the aforesaid described pieces of land, with all the buildings thereon during my natural life.' It was held by the court that this condition, read in the light of the grant, was to be interpretated as a reservation of the same measure of use thereafter as tenants for life, as the grantor had before enjoyed it as owner.

"In Webster v. Webster, 33 N. H., 18, the condition was: 'Reserving all the rights, title and interest in and unto the above named land, etc., for and during my natural life.'

"In Bunch v. Nicks, 50 Ark., 367, the deed contained the following clause: 'And the deed shall go into full force and effect at my death.' The court held this deed to be a valid one, conveying a present title to the grantee with the right of possession and use postponed until the grantor's death.

"In Wyman v. Brown, 50 Me., 139, the deed was as follows: 'This deed not to take effect during my lifetime—to take effect and be in force from and after my death.' This was held to be valid.

"In the case of Abbott v. Holway, 72 Me., 298, the instrument contained this clause: 'This deed is not to take effect and operate as a conveyance until my decease.' This was held to be a good and valid conveyance.

"In Shackelton v. Sebree, 86 Ill., 616, the deed contained covenants of warranty, and also this clause: 'This deed not to take effect until after my death—not to be recorded until after my decease.' This instrument was held operative as a deed, and not intended as a testamentary disposition of property. These authorities, most of them, at least, were cited with approval by this court in Cates v. Cates, supra.

"It is a settled rule that in the interpretation of an instrument, where the terms employed are ambiguous, or susceptible of more than one meaning, the court will consider the subsequent acts of the parties to ascertain how they understood it, and as indicating what construction they placed upon it. (H. G. Olds Wagon Works v. Coombs, 124 Ind., 62, and cases there cited; Lyles v. Lescher, 108 Ind., 382.)

"However, while it is proper to resort to this rule to show a practical construction by the parties, still, after all, the intention must be determined from the words of the instrument.

"The manner in which this deed was treated by the parties in this case, as it appears, is briefly as follows: It was executed in 1867 for a valuable consideration and duly recorded. In 1870, during the lifetime of the grantor, for a valuable consideration, the grantee sold and conveyed the land to the appellant subject to the life estate of the former. This deed was also recorded. Bazzle Carrico died in 1872, two years and over after the conveyance to the appellant. Frances, his wife, died in 1892, nearly twelve years after this second conveyance, and not until after her death, so far as it is disclosed, was this deed called in question. These subsequent acts of the grantor, in suffering the deed to be placed upon record, and in permitting the land to be sold and conveyed by their grantee to the appellant, subject to their life estate, are incompatible with the contention of appellee and hostile to the theory now advanced and advocated by him.

"In Broom's Maxims, star page 540, in translating a fundamental maxim of the law it is said: 'A liberal construction should be placed upon written instruments so as to uphold them if possible, and carry into effect the intention of the parties.' Applying the reason and the principle as laid down by the authorities cited, and guided by the rule of construction that the clause in controversy must be construed most favorable to the grantee, we can not hold that the grantors intended that this obligation was to be null and void, but we are constrained to decide that it conveyed a present interest in the real estate to the grantee, the full enjoyment of which was, by the subsequent clause, intended to be postponed until after the death of both of the grantors. By so holding we carry into effect the intention of the parties, and we fail to recognize wherein this construction works an injury or injustice to anyone. This interpretation, we think, will simply carry out the intention of Carrico and his wife and give protection to the rights of a purchaser acquired on the faith of their deed and their acts. The conclusion we have reached renders it unnecessary to consider the repugnancy, if any, existing between the grant and the exception. However, when such does exist it is well settled that the latter is void. See cases cited in Cates v. Cates, supra.

"It therefore follows that the court erred in sustaining the demurrer to the complaint."

We have reached the conclusion that the trial court erred in the construction placed upon the two deeds first mentioned in the opinion, but correctly construed the instrument executed to Catherine Flora McLain and Mattie Lou McLain. We are of the opinion that all three instruments are not of a testamentary nature, but that they were intended as deeds. In view of the fact that there is some question in the case as to the delivery of these instruments, we are not prepared to reverse and render.

Therefore, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

### OPINION ON REHEARING.

In overruling the motion for rehearing, we desire to state in full the case of Abney v. Moore, 18 So. Rep., 61, decided in 1895 by the Supreme

Court of Alabama. On the 13th of Feburary, 1880, William Walker, a resident of the county of Chilton, State of Alabama, as the ancestor of his vendee, executed a deed which was properly acknowledged, conveying certain lands. Walker after the execution of the deed continued in possession of the land until his death, exercising acts of ownership over same, and the defendants, that is his vendees, resided on the land with him until some time in January, 1891, when at said time Walker died, and since his death said vendees have been in continuous possession.

Moore, the administrator of Walker's estate, brought suit against Martha Abney and others, the vendees of Walker, for the land described in the deed. The deed in terms is as follows:

"Know all men by these presents that I, William Walker, a resident of the county of Chilton and State of Alabama, for and in consideration of the natural affection and love I have and bear unto my children hereinafter named, besides the further sum of ten dollars to me in hand paid by my said children, to wit (naming the defendants in the present suit), the receipt whereof is hereby acknowledged, have given, granted, bargained, sold and conveyed, and by these presents do give, grant, bargain, sell and convey, unto my said named children, their heirs and assigns, all my rights, title and interest and estate to and in the following described lands, lying in said county of Chilton and State of Alabama, to wit: (here follows a description of the lands sued for) to have and to hold unto my said above named children, their heirs and assigns, together with all and singular the tenements and appurtenances thereunto belonging, or in any manner thereto pertaining to the same, provided always, and it is expressly understood, that this conveyance is not to take effect until after my death, and that at my death the title to the foregoing described lands is to vest immediately in my said children. In testimony of the same I have hereunto set my hand and seal, this the 13th day of February, A. D. 1880. (Signed) William Walker. (Seal.)"

The contention of the administrator was that the deed was testamentary in character. Martha Abney and the vendees in the deed who were the children of William Walker, contended that the instrument was a deed, and that, it seems, was the sole question before the Supreme Court. As the opinion of that court so satisfactorily states our views as to the construction that should properly be given to the instrument before us, we set it out in full:

"The instrument to be construed—which will be set out in the report of the case—perfect in form as a conveyance concludes with the following provision: 'Provided always, and it is expressly understood, that this conveyance is not to take effect until after my death, and that at my death the title to the foregoing described lands is to vest immediately in my said children.' These are the only words employed in the instrument to suggest the idea that it is a will and not a deed. 'In determining whether an instrument be a deed or will, the main question is: Did the maker intend any estate or interest whatever to vest before his death, and before the execution of the paper? Or, on the other hand, did he intend that all the interest and estate should take effect only after his death? If the former, it is a deed; if the latter,

a will. And it is immaterial whether he calls it a will or a deed; the instrument will have operation according to its legal effect." (Gillham v. Mustin, 42 Ala., 366; Trawick v. Davis, 85 Ala., 345, 5 South., 83.) Another rule of construction in such cases is, that when the paper on its face is equivocal, the presumption is against its operating as testamentary, unless it is made clearly to appear that it was executed *animo testandi,* or being intended by the maker to operate as a posthumous disposition of his estate. (Rice v. Rice, 68 Ala., 218; 1 Redf. Wills, 170-172.) When the paper can have no effect as a deed, the court will incline to regard it as a will, if in that character effect can be given to the evident intent of the maker, which at last is the question of controlling importance. (Trawick v. Davis, supra; Sharp v. Hall, 86 Ala., 114, 5 South., 497; Adams v. Broughton, 13 Ala., 731.) Wills are ambulatory during the life of the testator, and are necessarily revocable; but deeds take effect by delivery, and are operative and binding during the life of the grantor. As was said in Crocker v. Smith, 94 Ala., 297, 10 South., 258: 'The intention of the maker is the ultimate object of the inquiry, whether it was intended to be ambulatory and revocable, or to create rights and interests at the time of the execution which are irrevocable. If the instrument can not be revoked, defeated or impaired by the act of the grantor, it is a deed; but if the estate, title or interest is dependent on the death of the testator—if in him resides the unqualified power of revocation—it is a will.' (Jordan v. Jordan, 65 Ala., 306.) In the case before us, we have as perfect a fee simple deed as can be drawn to convey land from the grantor to the grantees, and the only condition prescribed upon its operation in presenti is the one we have quoted above. It was executed without the attestation of a witness, so as to make it a will in any event. We must presume the maker knew that a will could not be executed without a witness, and this is a fact of very controlling importance, when the intention in the execution of the instrument is sought. Construing his intentions by his acts, he must have known, that an acknowledgment before a notary public in due form, was sufficient to make the paper a deed, so far as related to its execution, and that this was not sufficient for its legal execution as a will. The grantor delivered the instrument the day he executed it to the grantees, who were his children; he reserved in it no power of revocation; he continued to live on the lands with his children, in possession and control of them during his life, and never made any other disposition of them. Under these circumstances we must hold that when he provided that the conveyance was not to take effect until after his death and that at his death 'the title to the foregoing lands is to vest immediately in my said children,' he intended no more than to reserve to himself the use and enjoyment of the property during his lifetime, and that the operation of the gift, so far as possession was concerned, was to be postponed until his death, up to which time the property was to remain, not his own, but as his for use and enjoyment. If this was not his intention, why should he have gone to the trouble and care to make and execute a paper which he called a conveyance in its body, perfect in form, as an absolute conveyance—such as is usually employed for such a purpose—and which is unusual and unnecessary in making a will; and have acknowledged it

in the manner most usually employed to make it a deed, but never effectually done, and generally known to be ineffectual, to make it a will; and have delivered it to the grantees—the usual and necessary mode of perfecting a deed, and not usual or necessary to make a will operative—and have reserved no power of revocation—why should he have done all this, so like the conduct of one intending to make a conveyance in presenti, if his intention was not to pass the title until after his death? He had already used the necessary and proper words to make an absolute, vested title by the instrument in his children, and when he provided that the conveyance should not take effect until after his death when the title should immediately vest, he necessarily meant, if we are to give effect to what he was doing—to use the word title in this connection as a synonym of possession, which at his death should pass to the grantees. Such a construction comports, as we have shown with the general tenor of the deed, and is sanctioned by reason and authority. Any other construction would defeat the instrument, either as a deed or will, a result which should be avoided, if it can be upheld as either. (Golding v. Golding, 24 Ala., 126; Elmore v. Mustin, 28 Ala., 313; McGuire v. Bank of Mobile, 42 Ala., 591; Hall v. Burkham, 59 Ala., 353; and authorities cited supra.) The plaintiff as administrator of the deceased grantor had no right of recovery in this case. The creditor Johnson, if entitled to payment of his note out of the land, must seek relief in another forum."

Motion for rehearing is overruled.

*Overruled.*

Application for writ of error dismissed for want of jurisdiction.