124 Tex.Cr.R. 440, 63 S.W.2d 849; Blackshear v. State, 130 Tex.Cr.R. 557, 95 S.W.2d 960; Jackson v. State, 50 Tex.Cr.R. 302, 97 S.W. 312; Abston v. State, Tex.Cr.App., 102 S.W.2d 428; Id., 139 Tex.Cr.R. 416, 141 S.W.2d 337; and Id., 136 Tex.Cr.R. 152, 123 S.W.2d 902; Allgood v. State, 141 Tex.Cr.R. 327, 148 S.W.2d 433; Sigler v. State, 139 Tex.Cr.R. 167, 139 S.W.2d 277; Ward v. State, Tex.Cr.App., 158 S.W.2d 516, reversed by the Supreme Court of the United States, 316 U.S. 547, 62 S.Ct. 1139, 86 L.Ed. 1663.

A knowledge of and respect for the Constitution of Texas and of the United States and of the decisions of this court in respect to the matter under consideration on the part of the law enforcement officers of the State would greatly facilitate the suppression of crime and add stability to the government to which we are now clinging with all human tenacity. May it again be said that: "Our Constitution provides for an inquisitorial body legally clothed with cautious procedure and sufficient power, known as the grand jury." No officer has the right to ignore statutory directions to secure a warrant for parties whom he holds in custody charged with crime. When he fails to do this, he does not necessarily forfeit all right to utilize the evidence revealed in the trial of the party, but he certainly does put himself to an undue disadvantage. No recommendation can be more fundamental than that the officers of our land strictly obey the laws that they are endeavoring to enforce.

In the event of another trial, the evidence surrounding the taking of the second statement may be different. In such event, consideration should be given to the charge in compliance with the holding of this court on the first appeal. From the State's brief on that subject, we quote the following: "We are inclined to the view that the court should have instructed the jury that if they found, under all of the facts, that the first confession was involuntary, then it was presumed that the same influences dominated the giving of the second confession and the burden was on the State to overcome such presumption, and then follow such instruction by the general instruction dealing with whether or not confessions are voluntary, presenting by the wording of the charge the burden upon the State." We are in accord with this view. It is substantially so stated in the opinion by Judge Hawkins in Hernandez v. State, 110 Tex.Cr.R. 159, 8 S.W.2d 947. The court should instruct the jury as a matter of law that a first confession was involuntary; that the presumption obtained that the second confession was produced by the same influence, unless and until the State had overcome that presumption by evidence which a jury should find beyond a reasonable doubt. In the absence of some evidence to that effect, the second confession should be excluded along with the first one. There would be no issue for the jury and the party would be entitled to an instructed verdict, unless other evidence should develop sufficiently corroborating that given by Manuel Montalvo.

The judgment of the trial court is reversed and the cause remanded.

### PAYNE et al. v. BROWN et al.

### No. 13410.

Court of Civil Appeals of Texas. Dallas.

May 7, 1943.

Rehearing Denied June 11, 1943.

W. D. Justice, of Athens, and David E. O'Fiel, of Beaumont, for appellants.

Jack T. Life, of Athens, and Weeks, Hankerson & Surles, of Tyler, for appellees.

BOND, Chief Justice.

Appellees instituted this suit against appellants in trespass to try title to a certain described tract of land, asserting title under duly recorded deeds and the five and ten-year statutes of limitation. Appellants answered by plea of not guilty, also interposed in their favor the five and ten-year statutes of limitation. At the conclusion of the evidence, the trial court, on motion, and over appellants' objections, discharged the jury and entered judgment in favor of appellees for title and possession of the land in controversy.

The record discloses that appellees (plaintiffs) and their predecessors in title have had and claimed peaceable and adverse possession of the land in question for more than ten years next prior to the institution of their suit. Appellees' title emanated from the State. On August 17, 1905, J. C. Guynes and wife executed deed to T. S. Lee, deed duly recorded August 18, 1905, in the Deed Records of Henderson County, Texas; on January 25, 1927, Lee executed deed to C. A. Baker, deed recorded on January 26, 1927; and, thereafter, the chain of title is regular to appellees. Appellants also claim title through the deed from J. C. Guynes et ux. to T. S. Lee. At the date of said deed and for many years prior thereto, appellant Mary M. Payne was the wife of T. S. Lee, thus the land purchased in name of T. S. Lee

was, absent proof to the contrary, community property. In 1903, a son, Robert Edward Lee, was born to T. S. Lee and his said wife; and on August 23, 1905, T. S. Lee, without the joinder of his said wife, executed the instrument here in dispute. The son died intestate in 1907, leaving as his sole and only heirs, his father T. S. Lee and mother, Mary M. Lee, now Mary M. Payne; and thereafter, T. S. Lee purportedly sold the entire tract to appellees and those under whom they hold title; hence, appellant Mary M. Payne and those holding under her, claim the land in suit by inheritance from the son.

The rights of the parties anent the question of limitation, rest upon whether the title to the land passed to C. A. Baker by virtue of the deed to him from T. S. Lee, dated 1927, without notice of Mary M. Payne's undisclosed community and inherited interest in the land, portrayed of record by the following instrument, which was duly acknowledged on the day of its execution and filed for record in the miscellaneous Deed Records of Henderson County, Texas:

"August twenty third (23) 1905.

"Know All Men By These Presents: That I, T. S. Lee of Henderson County, State of Texas, being of sound mind and memory do make, publish and declare this to be my last will and testament, to-wit: do give at my death one undivided half of ninety (90) acres of land situated in Henderson County, Texas, known as block No. 10 and No. 107 according to subdivision of the Jacob Tator Survey. I give, devise and bequeath to my beloved son Robert Edward Lee who was borned 196 Alamo St. Dallas, Texas, August 16, 1902, being the son of T. S. Lee and Mary M. Lee and I give, devise and bequeath to my beloved son Robert Edward Lee to have and to hold to him my said son and to his heirs and assigns forever.

"(signed)   T. S. Lee,
"Henderson County, Texas.
"Witnesses by
"Earl Jones
"E. C. Baskin."

■■ To affirm the action of the trial court in excluding the above proffered instrument and entering judgment, the sole question involved is, whether the instrument is a deed or a will. Appellants contend that the instrument is a deed, sufficient to put appellees upon notice of ap-

pellants' title; and appellees contend that the instrument is a will, insufficient to give constructive notice, therefore they are innocent purchasers in due course. Manifestly, if the instrument is a deed, the recordation of it in the Deed Records of Henderson County, where the land is located, with disclosure of limited ownership in the grantor, was sufficient to put appellees upon constructive notice of appellant Mary M. Payne's outstanding interest in the land; and, limitation being a controversial issue, the trial court erred in determining title in appellees as a matter of law. On the other hand, if the instrument is a will—testamentary in effect—and conveys no estate in praesenti, such would give no constructive notice of title to the land vesting in appellant Mary M. Payne.

■ In determining the character and effect of the above instrument, the intention of the maker, ascertained by application of the usual rules of construction, controls. In the absence of extrinsic evidence, such must be determined as a matter of law from the face of the instrument. The distinction between a deed and a will, briefly stated, appears to be that while a deed vests an estate in praesenti, a will is inoperative for any purpose until the death of the testator. Turner v. Montgomery, Tex. Com.App., 293 S.W. 815; McLain v. Garrison, 39 Tex.Civ.App. 431, 88 S.W. 484, 89 S.W. 284. Thus, where it is apparent that the maker of the instrument intended to create a present interest in an estate, operative at death, the instrument will be regarded as a deed, although testamentary in character. No particular words or form of expressions are essential to constitute a deed or a will. If the maker intended to convey, or use terms that have the effect in law of conveying, a present interest in an estate, unrevocable by the maker, such instrument must be held to be a deed. The mere fact that the maker calls an instrument a will and employs words that are usually found in wills does not make the instrument a will if, by its terms, a present interest in an estate is conveyed.

■ So in the instrument here under review, the maker denominated his act a "will." It begins with testamentary language: "I, T. S. Lee of Henderson County, State of Texas, being of sound mind and memory do make, publish and declare this to be my last will and testament * * *," then follows "do give at my death (the property in suit) * * *. I give, de-

vise and bequeath to my beloved son Robert Edward Lee * * *." "Give, devise and bequeath" are words usually employed in wills and not in deeds. If the maker had stopped there, clearly his act would be a will—no present interest in the estate is shown to have been granted to the son, the gift to be and become effective only at death. However, the maker intended more, as shown by the instrument, viz.: "To have and to hold to him my said son and to his heirs and assigns forever." This is an habendum to a deed and not the language of a will. The granting clause "do gave" may be employed in a deed or a will; however, the term "I do give" to my beloved son conveys the idea of a gift in praesenti. Bringing the granting and habendum clauses together in close relation, we have in effect, the maker expressing the evident intention that he presently gives to his son, to have and to hold to him and to his heirs and assigns forever. This presents a right in the son and in his heirs and assigns, an unrevocable grant to pass the estate to his heirs and assigns. Further evidencing his intention, the instrument was duly acknowledged and filed for record in Henderson County. This is not required of wills, but is required of deeds; and the recording of the instrument raises a legal presumption of delivery, which is essential to deeds and not to wills.

In Low v. Low, 172 S.W. 590, this court, speaking through Chief Justice Rainey, held that an instrument executed and acknowledged, reserving to the grantor control of the premises for life, under certain contingencies, was a deed within the terms of Art. 1111, R.C. (now Art. 1296), providing that an estate in freehold may be made to commence in future by deed and not by a will. In McLain v. Garrison, 39 Tex.Civ. App. 431, 88 S.W. 484, rehearing overruled 39 Tex.Civ.App. 431, 89 S.W. 284, 285, the Austin Court of Appeals announced the rule: "Wills are ambulatory during the life of the testator, and are necessarily revocable; but deeds take effect by delivery, and are operative and binding during the life of the grantor." The opinion quotes with approval, Crocker v. Smith, 94 Ala. 295, 297, 10 So. 258, 16 L.R.A. 576, in which that court held: "If the instrument cannot be revoked, defeated, or impaired by the act of the grantor, it is a deed; but if the estate, title, or interest is dependent on the death of the testator, if

in him resides the unqualified power of revocation,—it is a will." In Chavez v. Chavez, Tex.Sup., 13 S.W. 1018, in construing an instrument similar to the one here in which the maker declared, "In the name of Almighty God, I, Miguel Chavez, * * * being of sound mind, and in the full possession of all my faculties, do hereby declare this to be my last will and testament * * * I declare it to be my will that, * * * she shall be the absolute owner of twenty varas of said above-described property * * * with the condition that said land shall not be sold by her until after my death * * *" etc., our Supreme Court held that the instrument was a deed, saying: "While the language employed in the instrument is largely testamentary, we think it evident that it was intended by the maker to be a conditional conveyance to become operative upon his marriage with Juana Hernandez. The language is inconsistent with the intention that it should not take effect until the death of the maker. If it was intended to be a will, and that no interest should pass by it until the death of the maker, the following provision of the instrument is inexplicable: 'With the condition that said land shall not be sold by her until after my death; and further, if the said Juana Hernandez should die before I do, said property shall revert to me or my heirs.'"

So, in the instant case, we think the grant "do give" and the habendum "to have and to hold to him my said son and to his heirs and assigns forever," clearly imply that the son was granted a present interest in the property, operative at the maker's death, or in the case of the son's death, the rights granted should pass to his heirs, or in the event of sale, to his assigns. Clearly, if the instrument was intended as a will, the rights granted to the son to sell and pass the estate to his heirs or assigns would be inexplicable. By the grant, he would have had such right independent of the maker's express request that the land should pass to his heirs or assigns. Therefore, we are of the opinion that the instrument is, in legal effect, a deed, and that the trial court erred in excluding it on the ground that it is a will. The instrument being a deed, the mother, Mary M. Payne, inherited one-half of his estate and the recital therein, that Robert Edward Lee, the grantee, was the son of T. S. Lee and Mary M. Lee, was sufficient to put the subsequent

356

grantee, C. A. Baker, and those claiming under him (appellees) upon notice of the outstanding title of Mary M. Payne.

The issue of limitation being controverted on elements necessary to vest title in appellees, it becomes necessary to reverse and remand the cause for a new trial on that issue—the trial court erred in discharging the jury and entering judgment with the limitation issue controverted and undetermined. It is so ordered.

Reversed and remanded.