**BEARD v. BEARD et al.**

No. 4634.

Court of Civil Appeals of Texas. Amarillo.

Jan. 24, 1938.

Rehearing Denied Feb. 21, 1938.

Hamilton & Fitzgerald, of Memphis, for appellant.

W. A. Keeling, Bruce W. Bryant, and Gaynor Kendall, all of Austin, and Otto Fitzjarrald, of Memphis, for appellees.

STOKES, Justice.

This suit was filed by appellant, Lizzie I. Beard, who is a widow, against the appellees, Annie Lee Beard and Lorene Young and her husband, Tom Young, Annie Lee Beard, and Lorene Young being the daughters of appellant. The suit was in the ordinary form of trespass to try title to eight tracts of land in Hall county.

Appellees answered, disclaiming any present interest in the land, but alleged they each was vested with an undivided one-half interest in remainder, and that appellant, their mother, was vested with a life estate therein and entitled to the possession, use, and enjoyment thereof during her lifetime, after which they asserted in themselves title in fee simple.

Appellant filed a supplemental petition in which she denied the asserted estate in remainder and alleged that appellees' claim thereto was based upon two deeds purporting to have been executed by the father of appellant, Lizzie I. Beard, and grandfather of appellees Annie Lee Beard and Lorene Young, dated May 9, 1910, and June 10, 1915, respectively. She alleged that such deeds were ineffective and void for the reason they were not delivered during the lifetime of the grantor, Jackson Collier, and that they had been placed of record in the deed records of Hall county without his authority or consent, and that the filing and recording of the deeds was through error and mistake.

The facts are that the land involved, together with other lands, were owned by Jackson Collier and his wife, Laura V. Collier, who were the father and mother of appellant, Lizzie I. Beard, and two other children, not parties to this suit, and whose names are L. May Parks, a daughter, and Z. C. Collier, a son. On the 9th of May, 1910, Jackson Collier and his wife executed three deeds of general warranty, conveying to appellant the first seven tracts of the land here involved for a consideration of $1 and love and affection. On the same day they executed like deeds to their other two children, conveying to them certain other lands not involved in this suit. On June 10, 1915, for a like consideration, they executed three other deeds, one of which conveyed to appellant the eighth tract involved in this controversy and other tracts to the other two children that are not here involved. These deeds were written in their entirety by Jackson Collier and conveyed to the grantees life estates in the respective tracts, with remainder in fee simple to their children. The record shows that after the deeds were executed they were placed in an iron safe in the home where Jackson Collier kept his valuable papers. The deeds were not acknowledged as required by the statute, but were witnessed by J. N. Collier and O. L. Tucker, who merely signed their names as witnesses, but did not acknowledge or certify to them in the usual manner.

On August 1, 1927, Jackson Collier and his wife executed a joint will and testament in which they bequeathed to the survivor in fee simple all property, real and personal, of which either may die seized and possessed, with power to manage or sell and dispose of as the survivor may wish or see proper. Jackson Collier died on the 5th of August, 1931, and the will was duly probated on the 24th of that month. On the 21st of January, 1935, Laura V. Collier, the surviving wife of Jackson Collier, and her son, Z. C. Collier, and her daughter, L. May Parks, joined by her husband, J. P. Parks, by general warranty deed, conveyed to appellant, Lizzie I. Beard, the eight tracts involved in this suit, the mother, Laura V. Collier, presumably acting under the power and authority given her in the will of her deceased husband, Jackson Collier.

In support of her claim to the land involved, appellant introduced the chain of title down to her father, Jackson Collier, the last will and testament of Jackson Collier, together with the proceedings in the county court in which it was admitted to probate, and the deed from her mother and her brother and sister conveying to her the land in controversy, after which she rested her case. To substantiate their claim to the land, appellees introduced the two deeds of May 9, 1910, and June 10, 1915, under which they claimed the remainder in fee simple after the death of appellant.

The case was submitted to a jury upon special issues, in answer to which the jury found substantially that it was the intention of Jackson Collier at the time he executed the deeds of May 9, 1910, and June 10, 1915, to vest the title to the land in appellant as a life estate, with remainder to appellees; that at the time of the execution of the deeds it was his purpose and intention to deliver them to the grantees or have them delivered for the purpose of passing such title; that it was his desire and intention at the time such deeds were executed or at some time before his death that they should be delivered to appellant. Special issue No. 4 was as follows: "Do you find from the evidence that the plaintiff, Lizzie I. Beard, never accepted said two deeds mentioned in the preceding special issue No. 3," to which the jury answered "No." Other findings were to the effect that appellees accepted the two deeds as conveyance to them of the remainder of the estate after the death of their mother, the appellant, and that Jackson Collier did not execute any other deed purporting to convey the land in question to appellant as her sole property.

Based upon the verdict, the court on the 27th of September, 1935, entered judgment denying appellant any relief save and except an estate for the term of her natural life in the property in controversy.

The case is presented here upon fifty-five assignments and propositions, but we think the material issues involved may be reduced to three, viz., first, whether the deeds under which appellees claim as remaindermen were delivered in such manner as to make them effective as conveyances; second, whether, after executing the deeds under which appellees claim, the grantor, Jackson Collier, abandoned or repudiated them as conveyances; and, third, whether such

two deeds were filed for record through error or mistake.

The evidence shows that on May 9, 1931, Jackson Collier suffered a stroke of paralysis from which he never recovered, and that he died August 5, 1931. A few days before his death he became unable to talk, and in attempting to express himself he could only mumble in an inaudible way. He was apparently possessed of his mental faculties, however, until the hour of his death and, while he was unable to express himself in an audible manner, in answer to questions propounded to him concerning his wishes, he would either nod his head in approval or shake his head in disapproval of suggestions made or questions asked him. It was shown that on the night of August 3d he made an effort to talk and, being unable to do so, his wife furnished him with paper and pencil but he was also unable to write. He was then lifted up so that he sat on the side of the bed and his wife, Laura V. Collier, went to the iron safe and procured a bundle of papers, and with these in her hands she sat down on the bed by his side and went over the various papers, naming them, and at times he would shake his head. He continued an effort to talk and finally he was asked by Mrs. Collier if he wanted the deeds to the children put on record. To this he nodded his head and she said to him: "Don't worry, Jackson, I will do it." She then told him to rest and he was placed back in bed and made no further effort to talk or express himself. He died Wednesday morning, August 5th, about 7 o'clock, and the record shows no further reference was made to the deeds or papers before his death. Jackson Collier was buried on the afternoon of August 5, 1931. On the morning of August 6, 1931, Mrs. Collier went to the iron safe in the hall of the home, procured the deeds in question, and gave them to her son, Z. C. Collier, with instructions to have them placed of record, which he immediately did. He called for them the next day, August 7th, after they had been recorded, and took them back to his mother's home and gave them to her, and she delivered them to appellant, who received them and immediately took possession of the land, which she has since held, and the record shows she was in possession of it at the time of the trial.

In the summer of 1932 appellant procured her attorney to prepare a deed for the execution of appellees, conveying to her their interests in the eight tracts of land involved in this suit and requested them to execute it, which they declined to do. In September of that year she again consulted her attorney, and upon being advised by her that the deeds of May 9, 1910, and June 10, 1915, executed by her father, Jackson Collier, were not subject to registration because of the absence of proper acknowledgments by either the grantor or the witnesses, she procured the witnesses to execute proper acknowledgments and again filed the deeds for record and had them recorded in the deed records of Hall county.

Appellant correctly states in her brief that the principal controverted issue is whether or not the deeds of May 9, 1910, and June 10, 1915, were delivered by the grantor, Jackson Collier, so as to become effective and convey the title to the real estate therein described. In support of her contention that, as a matter of law, the deeds were not so delivered, we are cited to a number of decisions of the courts of other jurisdictions holding substantially that no title passes in the absence of delivery to the grantee even though the intention to deliver the deed is clear, and there is no delivery where the proof fails to show the grantor did any act by which he parted with the possession of the deed. The deeds involved here were evidently kept in the iron safe of Jackson Collier from the dates of their execution until the 6th of August, 1931. The record discloses only one occasion when they were removed and that was on the night of August 3, 1931, when they, with other papers, were taken out of the safe by Mrs. Collier. The husband being desperately ill and unable to talk, she sat on the side of the bed with the papers in her hands and went over them, discussing each as she reached it. He expressed his disapproval of a number of suggestions made by her and his approval of others, among the latter being a question from her if he desired the deeds to the children placed of record. Upon his manifesting approval of that suggestion, she told him not to worry, that she would attend to it. Mr. Collier apparently was satisfied after she gave him this assurance and she placed the deeds and papers back in the safe where they remained until the morning of the 6th of August, when she again removed them from the safe and delivered them to her son, Z. C. Collier, with instructions to have them placed of record, which he did. Whatever may be the holding of the courts of other jurisdictions, it is settled in this

state that where a grantor parts with control of his deed and delivers it to a third person for delivery to his grantee immediately or upon the grantor's death, the conveyance takes effect immediately and vests in the grantee title, which begins immediately or after the grantor's death, as the case may be. Eckert v. Stewart, Tex.Civ.App., 207 S.W. 317; Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661, 662, 5 A.L.R. 1660; City of Corpus Christi v. Guth, Tex.Civ.App., 68 S.W.2d 546.

In the case of Taylor v. Sanford, supra, a deed was executed by the grantor on June 14, 1911. He caused it to be placed of record on that day and immediately mailed it to the grantee and the facts showed it was a deed of gift. Before it reached the hands of the grantee, the grantor died. The Supreme Court, speaking through Chief Justice Phillips, discussing the question of delivery of the deed, said:

"The law prescribes no form of words or action to constitute the delivery of a deed. It will not divest a grantor of his title by declaring his deed effective when his purpose was to withhold it from the grantee. Neither will it deprive the grantee of his rights where it was the grantor's intention to invest him with the title, though there be no manual delivery of the instrument. The question in all such cases is that of the grantor's intention. If the instrument be so disposed of by him, whatever his action, as to clearly evince an intention on his part that it shall have effect as a conveyance, it is a sufficient delivery. 2 Jones, Law of Real Property, § 1220, 1 Devlin on Deeds, § 269."

■ The record in this case shows that on the night of August 3, 1931, and continuously up to the hour of his death, Jackson Collier was in possession of his mental faculties. His physical condition was such that he could not express himself in language, but it is clear his mind was disturbed over some matter pertaining to his business affairs. His wife, who no doubt understood better than any one else the meaning and purport of his acts indicating an anxiety, asked him if his desire was that the deeds to the children be placed of record. In reply he nodded his head and she assured him his wishes would be complied with. After this incident, Mrs. Collier placed the deeds back in the safe and the morning after the funeral she removed them from the safe where she had placed them after being instructed

by Jackson Collier to have them placed of record, and delivered them to her son, with instructions that they be placed of record in the deed records of Hall county. The conclusion is inescapable that the acts and conduct of Jackson Collier on the occasion mentioned manifested his intention at that time to deliver the deeds to Mrs. Collier for the purpose of carrying out his instructions. The fact that she again placed the deeds in the iron safe where they remained until after Mr. Collier's death is of no significance. It does not establish the contention of appellant that the deeds remained in the possession of Jackson Collier until his death, but rather that Mrs. Collier retained possession of them until she could carry out the instructions which had been given her by her husband before his death. She seems to have had equal access to the iron safe with her husband and it was only natural that, after he had instructed her to place them of record, she would place them back in the iron safe to which she had access until she could comply with his instructions because that was the natural and logical place for them. It is true Mr. Collier did not instruct his wife to make manual delivery of the deeds to appellant, but his instructions to have them placed of record after having kept them in his safe over a period of fifteen or twenty years admits of no other interpretation than that his intention was that by placing them of record the deeds and title to the land should thereby be delivered to the grantee.

■ Under a number of propositions appellant complains of the form in which special issue No. 4 was submitted to the jury, and particularly to the manner in which the burden of proof is placed. The form of that issue had the effect of placing the burden of proof upon appellant to establish the fact that she did not accept the two deeds in question, and appellant contends the burden of proving that she did accept the deeds rested upon appellees. We cannot accede to this contention. Appellant's original petition was in the ordinary form of trespass to try title. Appellees answered by disclaiming all right or title in and to the land except only the remainder after the death of appellant. They alleged the plaintiff was vested with a life estate only in the premises and that she was entitled to possession of the lands for the term of her life. Appellant then filed her supplemental peti-

tion, alleging that the claims of appellees to an estate in remainder was based upon the deeds of May 9, 1910, and June 10, 1915. She alleged that both of the deeds were void and inoperative and that they conveyed no title to appellees because they were not delivered during the lifetime of the grantor, Jackson Collier. The record shows that immediately after the deeds were placed of record, they were procured by Z. C. Collier from the clerk's office and delivered to his mother, Mrs. Laura V. Collier, and by her delivered to appellant. It is further shown that she immediately took possession of the land and has held possession at all times since. If, indeed, there was any conflict in the testimony on the question of appellant's acceptance of the deeds, the special issue properly placed upon appellant the burden of proof in the matter, for the reason that she had pleaded the deeds were void and of no force or effect because they were not delivered during the lifetime of the grantor. Under her pleading, the duty rested upon her to establish the facts alleged by her which destroyed the force and effect of the deeds. One of those facts was that she had not accepted the deeds so as to complete their delivery. The special issue asked the jury if they found from the evidence that she never accepted the two deeds in question which, under the pleadings, was the proper form in which it should have been submitted.

The next contention of appellant is that the two deeds in question were filed for record through error and mistake. This contention is based upon the claim that if appellant accepted the deeds, she did so without knowing her father, Jackson Collier, had executed other and different deeds, and the finding of the jury against appellant on the question of acceptance was contrary to the undisputed evidence. She contends, therefore, that the trial court should have rendered judgment in her favor. The deeds of May 9, 1910, and June 10, 1915, were witnessed by O. L. Tucker. He testified that some time after those deeds were executed and witnessed by him, the grantor, Jackson Collier, called him in and told him he was changing the deeds and was "just going to make them to his children straight; that they had about as much sense as his grandchildren." He said the deeds in question were there at the time in an envelope, and that Mr. Collier executed other instruments and told the wit-

ness that if he, the witness, should outlive Mr. Collier, he (Mr. Collier) wanted the witness to have the latter deeds placed of record the day after his burial. There was other testimony concerning this incident, and this contention of appellant is based upon the claim that if she made any manner of acceptance of the deeds which were recorded, she did so in the absence of any knowledge of the deeds testified to by the witness Tucker as having subsequently been executed, and therefore through mistake, and she should not be bound by her acceptance of the recorded deeds. Appellant's contention in this respect is fully answered by the finding of the jury in answer to special issue No. 6 to the effect that no such deeds as those about which the witness Tucker testified were ever executed by Jackson Collier. If they should have been, however, we fail to see how their execution and her ignorance of it would have in any manner affected the question of her acceptance of the former deeds. They were delivered to her the next day after being placed of record and she immediately went into possession of the land, which she has continuously held, and, upon ascertaining that they had not been executed in such manner as to entitle them to be recorded in the deed records, she procured the witnesses to execute the proper acknowledgments and had them re-recorded. She makes no contention that she was not familiar with the contents of the deeds, and it was shown she read them the day she received them. This contention of appellant is overruled.

The contention of appellant that her father, Jackson Collier, after executing the deeds in question abandoned them as conveyances is based upon the facts testified to by the witness, Tucker, concerning other deeds subsequently executed by him. As we have stated, the jury found that no such deeds as those testified to by the witness Tucker were executed by Mr. Collier. In reality, the question of whether or not another set of deeds was executed by Mr. Collier after he executed the deeds of May 9, 1910, and June 10, 1915, was the only conflicting fact issue in the case. It was the only one that was controverted. There was really no dispute in the testimony concerning the facts which surrounded the other issues in the case, and if some of the special issues were subject to the criticism made by appellant, they were undisputed issues and it was

not necessary that they be submitted to the jury at all.

We have carefully examined all of the assignments of error and propositions urged by appellant, and finding no reversible error in any of them, the judgment of the court below will be affirmed.